UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

**ATTICA SCOTT,** *et al.*                                                                             **PLAINTIFF**

**vs.**                                                          **NO. 3:20-CV-535-CRS**

**LOUISVILLE/JEFFERSON COUNTY METRO**                   **DEFENDANTS**
**GOVERNMENT,** *et al.*

**MEMORANDUM OPINION**

This matter is before the Court on Defendants' amended partial motion to dismiss Plaintiffs' claims against Louisville/Jefferson County Metro Government and Mayor Greg Fischer, Louisville Metro Police Department ("LMPD") Chief Robert Schroeder, and Assistant Chief LaVita Chavous in their official capacities.[1] DN 34. Plaintiffs responded. DN 35. Defendants replied. DN 36. This matter is now ripe for adjudication. For the reasons discussed below, Defendants' motion will be denied in part and granted in part by separate order.

## I. BACKGROUND

The killings of George Floyd and Breonna Taylor sparked protests across the country in late spring of 2020. DN 32 at 6–8. In Louisville, Kentucky, those protests started on May 28, 2020. *Id.* ¶ 34. Plaintiffs Attica Scott, Corbin Smith, Kayla Meisner, Tyler Weakley, Stevie Schauer, Willa Tinsley, Patrick Moore, and the Kentucky Alliance Against Racial And Political Repression, on behalf of themselves and all others similarly situated, allege that, on eight separate days of protests, LMPD officers "released tear gas, flash bangs, long-range acoustic devices, pepper balls, rubber bullets, or other crowd-control weaponry on the Plaintiffs and others without

---

[1] Defendants initially filed a partial motion to dismiss on August 21, 2020. DN 18. Subsequently, Plaintiffs' filed their first amended complaint on September 11, 2020. Defendants' present motion addresses the claims asserted in Plaintiffs' amended complaint. Therefore, Defendants' initial partial motion to dismiss, DN 18, will be denied as moot.

1

any apparent justification." DN 35 at 2–3. Plaintiffs also allege that Mayor Fischer, Chief Schroeder, and Assistant Chief Chavous (collectively "Defendant City Officials") have "consistently approved of or excused LMPD's uses of excessive force, and all three have refused to investigate or discipline any officer for using crowd-control weapons against peaceful protesters." *Id.* at 3. Furthermore, Plaintiffs claim that "Mayor Fischer and Assistant Chief Chavous have publicly defended LMPD's forceful response to largely peaceful crowds," even though LMPD's conduct was "subject to intense media scrutiny" and Mayor Fischer "acknowledged the largely peaceful nature of the demonstrations." *Id.*

In their complaint, Plaintiffs allege numerous specific instances in which Plaintiffs and others, including journalists, were subjected to aggressive crowd control methods while displaying no threat to officers or to the public. DN 32 at 9–15, 26–40. These instances allegedly resulted in a range of injuries such as exposure to tear gas, being beating with batons, and being shot with projectiles. *Id.* at 27, 30, 32. For example, Plaintiff Kayla Meisner claims she and a crowd of protesters were barricaded into an area and were told to sit down by LMPD officers before the officers "began firing flash bangs and pepper balls and launching tear gas indiscriminately into the seated crowd." *Id.* at 36. Plaintiffs allege they suffered physical and emotional injuries as a result of LMPD conduct and were deterred from participating in future protests for fear of similar uses of force. *Id.* at 44–45.

Plaintiffs brought the present action in federal court on July 30, 2020. DN 1. In their first amended complaint, Plaintiffs assert claims against Louisville/Jefferson County Metro Government ("Louisville Metro"); Mayor Greg Fischer, Chief Robert Schroeder, and Assistant Chief LaVita Chavous in their individual and official capacities; and LMPD officers "J." Johnson, John Does #1–15, and Jane Doe #1 in their individual capacities (collectively "Defendant

Officers"). *Id.* at 1. These include claims under 42 U.S.C § 1983 against all defendants for alleged violations of Plaintiffs' First and Fourth Amendment rights as well as common law battery and assault claims against Louisville Metro and Defendant Officers. *Id.* at 43–47.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). "But the district court need not accept a bare assertion of legal conclusions." *Id.* (internal quotation marks omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

## III. DISCUSSION

In their motion to dismiss, Defendants argue (1) Louisville Metro is entitled to dismissal of Plaintiffs' § 1983 claims; (2) Louisville Metro is entitled to sovereign immunity on Plaintiffs' state law claims; and (3) the § 1983 and state law claims against Mayor Fischer, Chief Schroeder, and Assistant Chief Chavous in their official capacities should be dismissed as duplicative. DN 34-1. In their response, Plaintiffs agreed to voluntarily dismiss their state law claims against Louisville Metro. DN 35 at 5 n.2. Furthermore, they point out that no state law claims were

asserted against the Defendant City Officials. *Id.*; *see also* DN 32 at 46. Therefore, the Court need only address Plaintiff's § 1983 claims against Louisville Metro and the Defendant City Officials in their official capacities.

### A. Plaintiffs' § 1983 Claims Against Louisville Metro

Defendants argue that Plaintiffs' constitutional claims against Louisville Metro should be dismissed because (1) Plaintiffs have not met the requirements for proving municipal liability under *Monell v. N.Y.C Department of Social Services*, 436 U.S. 658 (1978) and its progeny; and (2) Plaintiffs' allegations against Louisville Metro do not satisfy the minimum pleading requirements set forward in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). DN 34-1 at 4–5.

#### 1. Municipal Liability under *Monell*

*Monell* held that a local government may not be held liable under § 1983 for injuries "inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible." *Monell*, 436 U.S. at 694. That is, *Respondeat superior* does not apply. *Id.* at 691. Instead, the plaintiff must show that "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "A plaintiff does this by showing that the municipality had a 'policy or custom' that caused the violation of his rights." *Wright v. City of Euclid*, 962 F.3d 852, 880 (6th Cir. 2020).

There are four ways a plaintiff may prove the existence of a municipality's illegal policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy

of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). In their motion to dismiss, Defendants state that Plaintiffs allege "no claim or evidence of a policy or pattern of conduct" that violated Plaintiffs' constitutional rights. DN 34-1 at 5. However, this sweeping assertion ignores the well-pleaded allegations of the amended complaint. For purposes of Defendants' Rule 12(b)(6) motion, Plaintiffs sufficiently allege municipal liability under two of the above methods: (1) ratification of illegal actions by officials with final decision-making authority and (2) a custom of tolerance or acquiescence of a pattern of federal rights violations.

### a. Ratification

The ratification theory of municipal liability does not require proof of a pattern or custom. *Wilson v. Louisville-Jefferson Cty. Metro Gov't & Brett Hankison*, No. 3:19-CV-00739-CRS, 2020 U.S. Dist. LEXIS 34437, at *4–6 (W.D. Ky. Feb. 26, 2020). Instead, ratification of a single violative act is enough for municipal liability to attach. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). An official acting with final decision-making authority may ratify the unconstitutional acts of its employees in two ways. The first is through "affirmative approval of a particular decision made by a subordinate." *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993). The second is by "failing to meaningfully investigate and punish allegations of unconstitutional conduct." *Wright*, 962 F.3d at 882; *see also Wilson*, No. 3:19-CV-00739-CRS at *5–6 ("[T]he Sixth Circuit has held that municipal liability may attach when an official with final decision-making authority and a duty to know and act upon unconstitutional conduct fails to investigate or correct the unconstitutional conduct.").

Here, Plaintiffs allege that Defendants Mayor Fischer, Chief Schroeder, and Assistant Chief Chavous are "final policymakers for all matters related to LMPD's conduct. Their decisions

5

regarding LMPD matters constitute the official policies of Defendant City of Louisville." DN 32 ¶ 288. Plaintiffs also allege that Fischer, Schroeder, and Chavous knew that LMPD officers used certain crowd control methods against protesters who were not exhibiting a threat to officers or to the public and that the city officials approved of that conduct. This includes an allegation that when asked about LMPD's conduct during the protests, "Defendant Fischer conceded that the protesters were nonviolent, but he nonetheless defended the use of tear gas and batons." *Id.* ¶ 60. Likewise, Plaintiffs state that LMPD's Standard Operating Procedures "require approval from a commanding officer—such as Defendants Schroeder and Chavous—prior to using any chemical agents, including pepper balls." *Id.* ¶ 86. This allegation, Plaintiffs claim, "make[s] it plausible that one or both have actually authorized the use of crowd control weapons that have injured Plaintiffs." DN 35 at 8. Furthermore, Plaintiffs repeatedly allege that Defendants failed to investigate or discipline officers for the use of chemical agents or excessive force against nonviolent protesters, even in the face of media scrutiny, lawsuits, and complaints to LMPD. *Id.* ¶¶ 39, 43, 51, 61, 75, 83, 87, 88, 160. Thus, Plaintiffs allege that the Defendant City Officials either affirmatively approved of the complained of LMPD conduct or neglected their "duty to know and act upon unconstitutional conduct." *Wilson*, No. 3:19-CV-00739-CRS at *5–6. Plaintiffs, therefore, state a *Monell* claim against Louisville Metro that is plausible on its face based on a ratification theory of liability.

### b. Custom of Acquiescence

Plaintiffs also allege that Louisville Metro has a custom of acquiescence to "unconstitutional uses of crowd-control weaponry against peaceful protesters." DN 35 at 9. This is a second, independent basis for municipal liability. To proceed on an "inaction theory" of liability, a plaintiff must show:

6

> (1) the existence of a clear and persistent pattern of [illegal activity];
>
> (2) notice or constructive notice on the part of the [defendant];
>
> (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (alterations in original). Plaintiffs have alleged each of these elements in their amended complaint.

One instance of potential misconduct is insufficient to show a clear and persistent pattern of constitutional violations. *Stewart v. City of Memphis*, 788 F. App'x 341, 347 (6th Cir. 2019). However, such a pattern is shown by "enough similar incidents" sufficient to put officials on notice that persons "would be subject to constitutional deprivation" if the problem is not remedied. *See Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989). For instance, in *Lipman v. Budish*, the Sixth Circuit held that allegations of six different instances in which county officials interviewed a potential child abuse victim in the presence of her alleged abusers were "enough to draw the reasonable inference that this custom [of interviewing potential abuse victims in the presence of their alleged abusers] was widespread throughout [the County Division of Children and Family Services] and known to policymakers within the county." 974 F.3d 726, 748 (6th Cir. 2020). Therefore, the court decided these allegations were sufficient to survive a motion to dismiss. *Id.*

Here, Plaintiffs have alleged "numerous specific instances of unlawful conduct by LMPD and repeated inaction by the Defendant City Officials." DN 35 at 10. The amended complaint cites to local and national news articles that report on LMPD's alleged use of aggressive crowd control methods, such as tear gas and rubber bullets, on what appeared to be peaceful

7

demonstrators and journalists who were there to report on the protests. DN 32 at 9 n.3, 10 n.7. In addition, the amended complaint describes press conferences in which city officials were questioned about LMPD conduct regarding the protests. *Id.* ¶¶ 69, 91, 92. Therefore, since the Court must accept the non-moving party's factual claims as true and draw reasonable inferences in the non-moving party's favor, the above allegations that Defendants' had either actual or constructive notice of a pattern of constitutional violations is sufficient for purposes of the present motion to dismiss.

For similar reasons, the third element of the "inaction theory" is satisfied as well. Deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence of his action." *Miller v. Calhoun Cty.*, 408 F.3d 803, 815 (6th Cir. 2005). This "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Id.* As has already been noted, Plaintiffs claim Defendants knew of the alleged instances of use of force against nonviolent protesters and failed to take corrective measures. At one point, as Plaintiffs' allege, Mayor Fischer did promise to institute reforms to the LMPD's use of force practices." DN 32 ¶ 96. But after pushback from LMPD, Plaintiffs allege that Fischer "walked back his promise" stated that "Defendant Schroeder was responsible for determining the appropriate course of action." *Id.* This alleged failure to investigate or discipline, or to make any meaningful policy reforms, suggests a conscious choice to allow the pattern of alleged conduct to continue. In their reply, Defendants claim "Louisville Metro Government has taken steps to revise and clarify its Standard Operating Procedures with respect to such [crowd control methods]." DN 36 at 5. However, they point to no specific action taken by Louisville Metro in this regard. And although evidence of such changes may be relevant

on a motion for summary judgment, Defendants' assertion is outside the scope of the present motion. Accordingly, the third element is satisfied.

Lastly, Plaintiffs have adequately alleged that Louisville Metro's custom of acquiescence was the cause of Plaintiffs' injuries. The Sixth Circuit has held that a municipality's failure to act in the face of obvious constitutional violations is properly treated as the cause of subsequent, similar violations. *Leach*, 891 F.2d at 1248. If we accept Plaintiffs' allegations as true, it is at least plausible that Louisville Metro's alleged failure to act on city officials' knowledge of potential constitutional violations over the course of several days of protests was the "moving force" behind subsequent violations of the same type. Therefore, in addition to the "ratification" theory of liability, Plaintiffs have also adequately plead all four elements of the "inaction theory" of municipal liability under *Monell*.

### 2. Minimum Pleading Requirements Under *Iqbal*

Next, Defendants argue Plaintiffs' allegations that Louisville Metro unconstitutionally violated their First and Fourth Amendment rights are "merely legal conclusions" and are, therefore, not entitled to a presumption of truth under the Rule 12(b)(6) analysis. DN 36 at 2; DN 34-1 at 5–6. In discussing the minimum pleading requirements to overcome a Rule 12(b)(6) motion to dismiss, *Iqbal* explained:

> [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . .
> . . . .
> . . . . While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678. Here, Plaintiffs have supported their claims of constitutional violations with specific factual allegations. The complaint contains numerous allegations of LMPD officers using

9

tear gas, pepper balls, rubber bullets, batons, and other physical force against Plaintiffs and members of the Plaintiff Class who were, allegedly, "peaceful and nonviolent protesters" and who "did not disobey or refuse any police order." DN 32 ¶ 297; *see also, e.g.*, *id.* ¶¶ 38, 39, 40, 45, 46, 47, 48, 50, 58, 65, 67, 69, 80, 103, 104, 107, 109. Furthermore, Plaintiffs claim Defendants' conduct deterred Plaintiffs from participating in further demonstrations. *Id.* ¶ 289. While the Court need not accept as true the legal conclusion that Defendants acted unconstitutionally, Plaintiffs' factual allegations about LMPD conduct are entitled to a presumption of truth for purposes of this motion. Taken as true—and viewing the complaint in the light most favorable to the plaintiffs—those allegations make it plausible that Plaintiffs' constitutional rights were violated.

Defendants' assertion that the complained of crowd control methods were justified is not relevant here. Although this may be a valid defense at a later stage in litigation, the "plausibility standard" is the only metric by which the Court may judge Defendants' present motion. *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). That is, Plaintiffs must "'allege facts' that, taken as true, are 'suggestive of illegal conduct.'" *Iqbal*, 556 U.S. at 696 (quoting *Twombly*, 550 U.S. at 564). They have done so. Therefore, Defendants' motion will be denied with respect to Plaintiffs' § 1983 claims against Louisville Metro.

### B. Plaintiffs' Official Capacity Claims

Defendants argue that the official capacity claims against Fischer, Schroeder, and Chavous should be dismissed because they are duplicative of Plaintiffs' claims against Louisville Metro. DN 34-1 at 8. Suits against municipal employees in their official capacities "generally represent

only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell*, 436 U.S. at 690 n.55). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. Although it is true that the Sixth Circuit has not given a definitive rule on whether official capacity claims must be dismissed in these situations, "[i]n the Eastern and Western Districts of Kentucky . . . the judges have adopted the practical approach of dismissing the official capacity claims." *Baar v. Jefferson Cty. Bd. of Educ.*, 686 F. Supp. 2d 699, 704 (W.D. Ky. 2010); *see also, e.g.*, *Thorpe v. Breathitt Cty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) ("[W]hen a § 1983 complaint asserts a claim against a municipal entity and a municipal official in his or her official capacity, federal courts will dismiss the official-capacity claim."); *Owens v. Trulock*, No. 1:18-CV-00167, 2020 U.S. Dist. LEXIS 11343, at *6 (W.D. Ky. Jan. 23, 2020) (dismissing official capacity claims as duplicative of Plaintiffs' claims against the City of Horse Cave).

Plaintiffs argue that the Sixth Circuit case *Barr v. Jefferson County Board of Education*, 476 F. App'x 621, 635–36 (6th Cir. 2012) "made clear . . . official capacity claims against individual defendants should not be dismissed as duplicative before resolution of municipal liability, since the precise parameters of a municipality's policies may affect an individual defendant's independent liability." DN 35 at 16. However, the Court does not read *Barr* as issuing such a mandate. In that case, a Jefferson County, Kentucky schoolteacher brought suit against the Jefferson County Board of Education as well as certain school board officials in their official capacities under 42 U.S.C. § 1983, claiming his First Amendment rights had been violated. *Id.* at 623. On summary judgment, the district court dismissed the official capacity claims as duplicative and dismissed the § 1983 claim against the school board because the actors involved in the

11

plaintiff's alleged rights violation "did not act pursuant to official policy and neither had final policymaking authority." *Id.* at 637. On appeal, a Sixth Circuit panel held there was no error in dismissing the official capacity claims because the district court had determined the municipality "was not liable as a matter of law." *Id.* at 636.

The Court does not understand *Barr*'s holding to mean that district courts must establish that a municipality is not liable before dismissing related official capacity claims. Instead, *Barr* simply states that dismissal of official capacity claims is proper when a court does find a municipality to not be liable under *Monell*, because the official capacity claims and the claim against the municipality are one in the same—if the claim against the municipality fails, then the official capacity claims must also fail. *Barr* does not say that this is the *only* situation in which dismissal of official capacity claims is proper. Although some courts have found that early dismissal of official capacity claims is not preferred, *see, e.g.*, *Troutman v. Louisville Metro Dep't of Corr.*, No. 3:16-cv-742-DJH, 2018 U.S. Dist. LEXIS 205847, *7 (W.D. Ky. December 4, 2018), this Court "finds that dismissal of official-capacity claims is permitted and judicious when the reasonable entity is also named as a defendant in the case." *Castleberry v. Cuyahoga Cty.*, No. 1:20 CV 218, 2020 U.S. Dist. LEXIS 105218, at *7 (N.D. Ohio June 16, 2020). Therefore, since Louisville Metro is named as a defendant in this case, the Court will dismiss Plaintiffs' official capacity claims against Fischer, Schroeder, and Chavous. Plaintiffs' concern that "the precise parameters of [Louisville Metro's] policies may affect an individual defendant's independent liability" is ameliorated by the fact that all three city officials are still named in their individual capacities.

### IV. CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss, DN 34, will be denied in part and granted in part by separate order.

November 24, 2020

Charles R. Simpson III, Senior Judge
United States District Court

13