UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00535-BJB-CHL

ATTICA SCOTT, et al.,                                                              **Plaintiffs,**

**v.**

**LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, et al.,**    **Defendants.**

<u>**MEMORANDUM ORDER AND OPINION**</u>

Before the Court is a Motion for Protective Order and Motion to Quash filed by Defendants Louisville/Jefferson County Metro Government, Greg Fischer, Robert Schroeder, and LaVita Chavous (collectively the "Louisville Defendants"). (DN 136.) Plaintiffs Attica Scott, Corbin Smith, Kayla Meisner, Tyler Weakley, Stevie Schauer, Willa Tinsley, Patrick Moore, and The Kentucky Alliance Against Racial and Political Repression (collectively "Plaintiffs) filed a response, and the Louisville Defendants filed a reply. (DNs 138 and 143, respectively.) Therefore, the motion is ripe for review.

For the following reasons, the Louisville Defendants' Motion for Protective Order and Motion to Quash (DN 136) is **DENIED**.

I.    **BACKGROUND**

A.  **Factual and Procedural Background**

This case involves allegations of unconstitutional conduct by officers with the Louisville Metro Police Department ("LMPD") during the protests and civil unrest of 2020 in Louisville, Kentucky. (*See generally* DN 32, Plaintiffs' First Amended Complaint). More specifically, Plaintiffs allege violations of their free speech rights under the First Amendment; excessive force under the Fourth Amendment; state law battery; and state law assault claims. (*Id.*) Among other

relief, Plaintiffs seek 1) to permanently enjoin Defendants from use of crowd control weaponry on peaceful protestors; 2) the promulgation of official policies restricting crowd control weaponry; 3) monetary damages to Plaintiffs for their loss of rights, along with physical and emotional injuries; 4) punitive damages against certain officers, as well as Defendants Fischer, Schroder, and Chavous; and 5) attorneys' fees and costs. (*Id.*)

Plaintiffs' request for injunctive relief is echoed in their Motion to Certify Class Pursuant to Rule 23(b)(2) (DN 139), wherein Plaintiffs seek "an order enjoining Defendants from using Crowd Control Weaponry on peaceful people at protests, and requiring Defendants to promulgate official policies restricting the use of Crowd Control Weaponry to only those individuals who pose an imminent risk of serious physical danger to an officer or others." (*Id.* at # 919). Specifically, Plaintiffs seek to certify the class under Fed. R. Civ. P. 23(b)(2) "for the sole purpose of obtaining an injunction to prevent LMPD from using such indiscriminate force on peaceful protestors in the future." (*Id.* at # 909).

LMPD's former and *current* policies and procedures, and any amendments thereto, are at issue in this litigation and are a basis for the Parties' claims and defenses. Defendants have opposed Plaintiffs' request for injunctive relief partially on the basis that LMPD's policies have been amended since the events alleged in the Amended Complaint. (*See* DN 132 at # 767: ". . . Plaintiffs rejected a discussion of monetary settlement value in favor of attempting to settle injunctive components of the case instead . . . . While Defendants respect and understand Plaintiffs' position, at this juncture they are not prepared to further modify [LMPD's Standard Operating Procedures] beyond what has already been changed."[1])

---

[1] While settlement negotiations are normally considered confidential, the Parties chose to disclose this aspect of their negotiations in the Parties April 19, 2023 Joint Status Report (DN 132).

Beginning in March 2023, Plaintiffs sought to depose current Louisville Mayor Craig Greenberg, believing him to be a relevant witness because 1) he is responsible for interpreting and implementing LMPD's policies and procedures at present, and 2) LMPD has argued that Plaintiffs' requested injunctive relief is cured, in part, by LMPD's amendments to the policies at issue:

> As to the relevance of Mayor Greenberg and Chief Gwinn-Villaroel, both are relevant witnesses insofar as both are currently charged with interpreting and implementing the relevant SOP provisions. Defendants have opposed Plaintiffs' request for injunctive relief at least partially on the basis that LMPD's policies have been amended since the events alleged in the Amended Complaint. The scope of those amendments, the current content of those policies, and the interpretation of those policies by Louisville leaders are therefore relevant to the claims and defenses in this action.

(DN 138-6 at # 887).

In email exchanges between counsel, Plaintiffs indicated they were happy to consider "a defined scope of questioning" regarding Mayor Greenberg's deposition (DN 138-7 at # 893), and further indicated a willingness to limit the scope of the Mayor's examination: "We're not trying to use this as a fishing expedition, so if your concern is that we're going to be inquiring about a broad range of unrelated topics, we're happy to discuss appropriate limits on topics/scope of questioning." (DN 138-8 at # 898.)

On May 17, 2023, Plaintiffs served a Notice of Deposition and Subpoena upon Mayor Greenberg pursuant to Fed. R. Civ. P. 45, noticing Mayor Greenberg's deposition for May 22, 2023.  (DN 136 at # 792-95.)  Louisville Defendants then filed the instant motion on May 19, 2023.

**B.  Louisville Defendants' Motion**

In their motion, Louisville Defendants argue that Plaintiffs' request to depose Mayor Greenberg is overly broad and unduly burdensome, and is an attempt to harass, annoy, and oppress

him in violation of Fed. R. Civ. P. 26(c).  (DN 136 at # 787.)  Louisville Defendants argue that Mayor Greenberg is a high-ranking government official who is not generally subject to deposition. (*Id*. at # 787-88, citing *Murray v. U.S. Dep't of Treasury*, Civil Action No. 08-CV-15147, 2010 WL 1980850 (E.D. Mich. May 18, 2010); *In re United States (Kessler)*, 985 F.2d 510, 512 (11th Cir. 1993); *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985)).

Louisville Defendants urge the Court to apply the "apex doctrine," which stems from *United States v. Morgan*, 313 U.S. 409, 422 (1941) in which the Supreme Court "strongly cautioned against taking the depositions of high-ranking government officials."  (DN 136 at # 788.)  Pursuant to the "apex doctrine," "absent extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions."  (*Id.* at # 788-89, citing *EMW Women's Surgical Ctr., P.S.C. & Planned Parenthood of Indiana & Kentucky, Inc. v. Glisson*, 2017 WL3749889, at *2 (W.D. Ky. Aug. 30, 2017); *Coleman v. Schwarzenegger*, 2008 WL 4300437, at *3-4 (E.D. Cal. Sept. 15, 2008.))  According to Louisville Defendants, the "extraordinary circumstances test" born from the "apex doctrine" shifts the burden to Plaintiffs to prove, with respect to Mayor Greenberg, that (1) the high-ranking official has first-hand knowledge related to the claim being litigated, and (2) that the information cannot come from other sources, such as other parties' depositions or interrogatories.  (DN 136 at # 788-89, citing *EMW*, 2017 WL 3749889 at *2; *Boudreau v. Bouchard*, No. 07-10529, 2008 WL 4386836, at *2 (E.D. Mich. Sept. 25, 2008);  *Jackson v. City of Detroit*, No. 05-74236, 2007 WL 2225886 (E.D. Mich. Aug. 1, 2007); *In re United States (Holder)*, 197 F.3d 310, 314 (8th Cir. 1999); *In re United States Dep't of Educ. (DeVos)*, 25 F.4th 692, 703 (9th Cir. 2022); *In re McCarthy*, 636 F. App'x 142, 144 (4th Cir. 2015).)

Louisville Defendants argue that Plaintiffs cannot meet the "extraordinary circumstances test" with respect to Mayor Greenberg because: 1) Mayor Greenberg was not the sitting Mayor during the unrest of 2020, and as he did not assume office until January 2023, has no firsthand knowledge of Plaintiffs' legal claims, injunctive or otherwise (*see generally* DN # 136); and 2) Plaintiffs have not proven that they cannot obtain the information sought through Mayor Greenberg's deposition by other means, and therefore seek this discovery as a pretext to annoy or harass him.  (*Id.* at # 790.)

Plaintiffs counter that Louisville Defendants' motion improperly shifts the burden of proof to Plaintiffs.  (DN 138 at # 800.)  Plaintiffs allege that LMPD's current policies and procedures, and any interpretation of those policies by Mayor Greenberg, are relevant to the claims and defenses in this action (*Id*. at 803), and that it is Mayor Greenberg's burden to make a specific showing of harm pursuant to Fed. R. Civ. P. 26(c)(1) (*Id.* at # 804-06).  Relying on *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012), Plaintiffs argue that the apex doctrine has been explicitly overruled by the Sixth Circuit, that the doctrine is "invalid," and that its application by the Court in the instant case would constitute an abuse of discretion.  (DN 138 at # 806-09.)  Plaintiffs hedge that even if the apex doctrine were applied, Plaintiffs would prevail because 1) Mayor Greenberg has firsthand knowledge regarding Plaintiffs' claims for relief, and 2) the information sought from him is not available from other discovery sources. (*Id.* at # 806-12).  Finally, Plaintiffs argue that Louisville Defendants lack standing to quash Mayor Greenberg's subpoena under Fed. R .Civ. P. 45 because Greenberg is a nonparty for whom Louisville Defendants refused to accept service, and in the motion they filed in this matter, they did not purport to represent Greenberg.  (*Id.* at # 812-13.)

## II.     DISCUSSION

### A.  Legal Standard

Fed. R. Civ. P. 26(b) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  This language is broadly construed by the federal courts to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  "When faced with questions over, or disputes about, what information or documents may be obtained based on their relevancy, it is axiomatic that the trial court is afforded broad discretion to determine the boundaries of inquiry."  *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-cv-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)).

Fed. R. Civ. P. 26(c)(1) allows a Court to issue a protective order for good cause to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).  Good cause requires the moving party to "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought . . . ."  *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)).  As stated in *Serrano*, the Sixth Circuit has endorsed the view that "to justify a protective order, one of Rule 26(c)(1)'s enumerated harms must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."  *Serrano*, 699 F.3d at 901 (internal citations omitted).

Some courts, however, have found that high-ranking government officials are not generally subject to depositions.  *Murray*, 2010 WL 1980850 at *2.  This is because of the "responsibilities

and time constraints incumbent on high-ranking officials" and because "testifying in in every case to which the agency or administration is a party would monopolize the official's time." *EMW,* 2017 WL 3749889 at *2, citing *In re United States (Kessler)*, 985 F.2d at 512; *Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *United States v. Morgan*, 313 U.S. at 422.  However, this limitation is not absolute.  *See Boudreau* 2008 WL 4386836 at *2.  The general rule across the circuits is that "absent extraordinary circumstances, high-ranking officials may not be subjected to depositions or called to testify regarding their official actions." *See Coleman,* 2008 WL 4300437 at *3-*4.

Louisville Defendants ask the Court to apply the apex doctrine and "extraordinary circumstances test," and argue the same will bar any deposition of Mayor Greenberg. The extraordinary circumstances test may be met where 1) the official has first-hand knowledge related to the claim being litigated, and 2) it is shown that other persons cannot provide the necessary information.  *EMW*, 2017 WL 3749889 at *1-*2, citing *Boudreau,* 2008 WL 4386836, at *2; *Baine v. Gen. Motors Corp.*, 141 F.R.D. 332, 335 (M.D. Ala. 1991); *In re United States (Holder)*, 197 F.3d at 314.  The extraordinary circumstances test, however, has not been specifically adopted by the Sixth Circuit.  *Serrano*, 699 F.3d at 901.

Plaintiffs, on the other hand, ask the Court to apply the analysis used in *Serrano*, 699 F.3d at 900, to the instant matter.  In *Serrano*, the district judge overturned a magistrate judge's decision to prevent the deposition of the corporate defendant CEO when the magistrate judge applied the apex doctrine, but did not analyze what harm the CEO would suffer under Rule 26(c) by submitting to the deposition.  *EMW*, 2017 WL 3749889 at *2, citing *Serrano*, 699 F.3d at 901.  However, it is unclear whether the *Serrano* ruling extends to high-ranking government officials, such as Mayor Greenberg. *EMW*, 2017 WL 3749889 at *2, citing *Duncan v. Husted*,

7

No. 2:13-cv-1157, 2015 WL 631103, at *3 (S.D. Ohio, Feb. 12, 2015) (analyzing whether Serrano's directive would apply equally to governmental officials as it does to corporate officials).

### B.  Analysis

Nothing in Louisville Defendants' briefing abrogates their burden to prove a protective order is warranted under Fed. R. Civ. P. 26(c)(1).  This Circuit has endorsed the view that to justify a protective order, one of Rule 26(c)(1)'s enumerated harms "must be illustrated with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. . . . [W]e have not abandoned the requirement that one of the harms listed in Rule 26(c)(1)(A) must be specified in order to warrant a protective order." *Serrano*, 699 F.3d at 901 (internal citations omitted).  *Serrano* went on to specifically refute the magistrate judge's finding that the Sixth Circuit had implicitly adopted the apex analysis. *See id.* at 901.  Louisville Defendants have made no particularized showing that Mayor Greenberg will suffer any harm by sitting for a deposition in this matter.  They have attached no supporting affidavits from Mayor Greenberg detailing, for example, that his schedule and duties make scheduling a deposition difficult, as the deponent did in *Nix*, 11 F. App'x at 500.  Rather, Louisville Defendants have made broad, conclusory statements assuming that Plaintiffs intend to harass and annoy the Mayor with a "fishing expedition" style deposition[2] (DN 136 at # 786-87), when in fact, the

---

[2] Defendants' motion (DN 136) is rife with histrionic language vilifying Plaintiffs' request to depose Mayor Greenberg, variously describing the same as "ludicrous" (DN 143 at # 1207), "nonsensical" (DN 136 at # 786), "inexplicabl[e]" (*Id.*) and "sheer frivolousness" (*Id.* at 789) that would require "fortune telling" (DN 143 at # 1205) by the Mayor.  This hyperbole is not helpful to the Court's analysis, and one such moment rises to a mischaracterization.  Defendants allege Plaintiffs have admitted that Mayor Greenberg's deposition is, indeed, a fishing expedition: "Put another way, *as stated by Plaintiffs' counsel* during the parties' meet and confer process, Plaintiffs' grounds for deposing Mayor Greenberg are not that he has specific information relative to the events of 2020 . . . but is a fishing expedition on the wholly speculative chance he may have information relative to current LMPD policies which somehow could touch upon Plaintiffs' various and far-reaching claims for injunctive relief against LMPD on the use of crowd control devices."  (DN 136 at # 786.)  (emphasis added.)  Nothing in the record supports that accusation.

record supports the opposite conclusion.  Plaintiffs have indicated their willingness to set limitations on the topics and scope of the Mayor's examination.  (DN 138-8 at # 898.)  A bald assertion that being deposed would present a substantial burden is insufficient to meet Rule 26(c)(1)'s requirements. *See Serrano*, 699 F.3d at 901, quoting *Conti v. Am. Axle & Mfg., Inc.*, 326 Fed. Appx. 900, 907 (6th Cir. 2009) (unpublished opinion).

Even if this Court did apply the extraordinary circumstances test proffered by Louisville Defendants, Mayor Greenberg's deposition would still be allowed to proceed.  Analyzing the present case under this framework, Mayor Greenberg is considered a high-ranking official not normally subject to the burden of depositions. *See Elvis Presley Enterprises, Inc. v. City of Memphis, Tennessee*, No. 2:18-CV-02718, 2020 WL 4015476, at *11 (W.D. Tenn. July 16, 2020).  However, unlike the government officials in the cases cited by Louisville Defendants, Mayor Greenberg is likely to have first-hand knowledge of the matters at issue in this action.  First, Plaintiffs seek injunctive relief and promulgation of policies to restrict crowd control weaponry.  (DN 32.)  Louisville Defendants argue that Mayor Greenberg has no first-hand knowledge of the claims or defenses at issue, given that he was not mayor until 2023.  However, the relief sought by Plaintiffs includes *forward looking* relief.  (*See* DN 32, DN 139.)  Unlike in *EMW,* 2017 WL 3749889 at *3-*4, where the Court found a single email exchange along with the attenuated testimony of a single witness insufficient to place Governor Bevin squarely within the controversy (*Id.* at *1), here the record is replete with references to Mayor Greenberg's ongoing and current responsibilities with respect to the Parties' claims and defenses. The Mayor is vested with the statutory authority to "supervise, administer, and control" the LMPD (KRS § 67C.105(5)), and discovery has shown that pursuant to this authority, the sitting Mayor may give the police orders (*see* DN 138-1 at # 824), that the Mayor's office sits within the chain of

command governing LMPD officers (*see* DN 138-2 at # 841-82), that the Mayor may direct and request changes to tactical decisions made during protests (*see* DN 138-2 at # 856), and that it is within the Mayor's purview, in his executive function, to dictate policy (*see* DN 183-3 at # 879).

Further, the records shows that Mayor Greenberg may have made or contributed to changes to LMPD's policies and procedures that bear directly upon Plaintiffs' claims.  (*Compare* DN 138-4 at # 881-82, wherein Mayor Greenberg's office stated that chemical agents can only be used in cases "to protect human life, protect from great physical harm, when there is gunfire within a crowd, or other extreme circumstances. . . [and] would not be used solely for disorderly or unlawful crowds," to DN 138 at 82: tear gas may be used when "an individual . . . is acting with intent to cause injury," such as by "throwing bottles . . . .")

Notably, Louisville Defendants do not contend that Mayor Greenberg has no personal knowledge of how LMPD's policies and procedures are implemented, nor have they filed an affidavit to that effect, as the defendant did in *Nix*, 11 F. App'x at 500.  Under Fed. R. Civ. P. 26, Plaintiffs have the right to explore the extent of Mayor Greenberg's first-hand knowledge of the interpretation and application of the policies and procedures at issue in this matter.

Second, Louisville Defendants have not shown that persons other than Mayor Greenberg can provide the information sought by Plaintiffs.  They have made no offers of a substitute witness who can testify in the Mayor's place, as the Defendant did in *Duncan,* 2015 WL 631103 at *2-*4.  They have not proffered that the discovery sought by Plaintiffs can be undertaken by various members of the mayor's administration, or that the mayor's involvement was limited to his role as a supervisor for city employees, as in *Watson v. City of Cleveland*, 202 F. App'x 844, 852 (6th Cir. 2006).  While the Parties disagree about whether Mayor Greenberg is the *only* witness with authority to interpret LMPD's policies, he is certainly *one* of the individuals

charged with the same; indeed, Louisville Defendants concede that the Mayor's office plays a collaborative role in their review and changes.  (*See* DN 143 at # 1206-06).  The record is unclear regarding the exact process by which LMPD's policies are promulgated and implemented, the totality of individuals responsible for making those decisions, and how those individuals' input is weighted.  The "extraordinary circumstances test" does not excuse a high-ranking government official from testifying on the basis that he made a decision as part of a collaborative function; rather, the ambiguity in the record supports further discovery of the same. Louisville Defendants have failed to indicate who, if anyone, could stand in the Mayor's shoes to testify in his stead, or what other, less intrusive means of discovery, such as interrogatories or requests for admission, would accomplish the same.

Finally, as to Plaintiffs' contention that Louisville Defendants lack standing to challenge the subpoena issued to Mayor Greenberg, it is clear from their reply brief (DN 143) that defense counsel represents Louisville/Jefferson County Metro Government in this matter, and by extension, also effectively represents Mayor Greenberg for the purposes of this litigation. Accordingly, the Court deems the instant motion to have been filed on behalf of Mayor Greenberg, rather than on behalf of Louisville Defendants.

Therefore, the Court concludes that Louisville Defendants have failed to meet their burden for a protective order and to quash Mayor Greenberg's deposition.  However, the Court directs the Parties to work together to develop a list of relevant topics for which Mayor Greenberg will be asked to testify and to appropriately limit the scope and duration of his deposition.

III.    **ORDER**

For the reasons set forth above, IT IS HEREBY ORDERED that Louisville Defendants'

Motion for Protective Order and Motion to Quash with respect to Mayor Craig Greenberg (DN

136) is **DENIED**.


Colin H Lindsay, Magistrate Judge
United States District Court


cc:  Counsel of record

August 14, 2023

12