UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00535-BJB-CHL

ATTICA SCOTT, et al.,                                                          Plaintiffs,

v.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, et al.,    Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion for *In Camera* Review of Plaintiffs Attica Scott, Corbin Smith, Kayla Meisner, Tyler Weakley, Stevie Schauer, Willa Tinsley, Patrick Moore, and Kentucky Alliance Against Racial and Political Repression (collectively "Plaintiffs"). (DN 149.) Defendants Louisville/Jefferson County Metro Government, Greg Fischer, Robert Schroder, and LaVita Chavous (collectively "Defendants") filed a response, and Plaintiffs filed a reply. (DNs 160, 161.) Therefore, the motion is ripe for review.

**I.      BACKGROUND**

This case involves allegations of unconstitutional conduct by officers with the Louisville Metro Police Department ("LMPD") during the protests and civil unrest of 2020 in Louisville, Kentucky. (DN 32.) More specifically, Plaintiffs allege violations of their free speech rights under the First Amendment, excessive force in violation of the Fourth Amendment, state law battery, and state law assault claims. (*Id.*) Among other relief, Plaintiffs seek (1) to permanently enjoin Defendants from use of crowd control weaponry on peaceful protestors; (2) the promulgation of official policies restricting crowd control weaponry; (3) monetary damages to Plaintiffs for their loss of rights and physical and emotional injuries; (4) punitive damages; and (5) attorneys' fees and costs. (*Id.*) Plaintiffs seek to certify a class under Fed. R. Civ. P. 23(b)(2) "for the sole purpose

of obtaining an injunction to prevent LMPD from using such indiscriminate force on peaceful protestors in the future." (DN 139, at PageID # 909.)

Discovery in this case has been ongoing since November 2020. (DNs 39, 40.) The Court's scheduling order included a requirement consistent with its usual practice that any party wishing to file a discovery motion contact the undersigned's Case Manager to schedule a telephonic conference regarding the issue prior to filing the motion. (DN 40.) After numerous such calls with the Parties, in its May 3, 2023, Order, the Court removed the requirement that the Parties schedule a phone call prior to filing a discovery motion, explaining that it was doing so "[b]ecause the Parties have worked well together and have previously shown their willingness to attempt to resolve disputes without Court intervention." (DN 133.) Thus, the instant motion was filed without first having such a conference. The Court's order did not abrogate the Parties' duty to meet and confer pursuant to either Fed. R. Civ. P. 37(a)(1) or LR 37.1. (DN 40.)

On July 31, 2023—the close of fact discovery—Plaintiffs filed the instant motion requesting that the Court conduct an *in camera* review of certain items listed on Defendants' privilege log. (DN 149.) Plaintiffs tendered Defendants' privilege log with their motion. (DN 149-1.) The log consisted of a 100-page-long chart with the following headers:

| Doc ID | Parent ID | Sent Date/Time | Subject/File name | From | Recipients | Privilege Type | Comments |
| --- | --- | --- | --- | --- | --- | --- | --- |

(DN 149-1.) The log contains many blank entries in the "Sent Date/Time," "From," and "Recipients" fields. (*Id.*) Regarding their meet and confer obligations, Plaintiffs stated that they e-mailed Defendants' counsel regarding the deficiencies they perceived in the privilege log on February 28, 2023. (DN 149, at PageID # 1492-93; DN 149-2; DN 160, at PageID # 2023; DN 160-1.) Defendants' counsel responded on April 21, 2023, standing by their privilege designations. (DN 149, at PageID # 1492-93; DN 149-3; DN 160, at PageID # 2023; DN 160-1.)

2

On April 26, 2023, Plaintiffs' counsel told defense counsel that he would "follow up shortly" on the privilege log and other discovery issues, but no further communications were presented to the Court. (DN 160-1, at PageID # 2046.) Instead, Plaintiffs proceed to file the instant motion on the last day of the fact discovery period.

In their motion, Plaintiffs argued that "Defendants' privilege log lack[ed] sufficient detail for Plaintiffs to assess the validity of many privilege assertions." (DN 149, at PageID # 1491.) Plaintiffs emphasized that in lieu of a supplemental privilege log, Plaintiffs were requesting that the Court proceed to conducting an *in camera* review of the documents. Plaintiffs proffered four separate lists of line items from Defendants' privilege log that they claimed were potentially improper designations. (DN 149, at PageID # 1491-92; DN 149-4; DN 149-5; DN 149-6; DN 149-7.) Plaintiffs categorized the line items they challenged as follows: documents regarding policy decisions, attachments to emails, documents exchanged between non-attorneys, and certain documents that were exchanged with an attorney but still appeared to be nonprivileged. (DN 149, at PageID # 1491-92.) Plaintiffs claimed that the disputed entries as to each of these categories did not contain sufficient information to invoke the relevant elements of the privilege or other protection claimed. (*Id.* at 1494-1506.)

In their response, Defendants explained that they used their e-discovery vendor to generate the privilege log based on certain designations placed on the documents that were reviewed via Relativity, a software program. (DN 160, at PageID # 2032-33, 2032 n.1.) Defendants argued that Plaintiffs did not fully satisfy their meet and confer obligations prior to filing the instant motion. (*Id.* at 2034, 2036-37.) They represented that in response to Plaintiffs' motion, they had served a supplemental privilege log correcting some of the blank entries that appeared on the original log. (*Id.* at 2034; DN 160-2.) They also indicated that the Parties collaborated to produce

3

an additional copy of the privilege log that synthesized the original privilege log, Defendants' amendments, and Plaintiffs' objections. (DN 160, at PageID # 2034; DN 160-3.) But Defendants also maintained that their privilege log was sufficient for the Court to determine that their designations were appropriate. (DN 160, at PageID # 2034, 2036-38.) In particular, Defendants argued that they properly designated attachments to privileged emails as likewise privileged. (*Id.* at 2038.)

In their reply, Plaintiffs argued that Defendants ignored the relief Plaintiffs had requested in their initial motion: an *in camera* review, not a supplemental privilege log. (DN 161.) Plaintiffs also contended that they had satisfied their meet and confer obligations and reiterated that Defendants' privilege log, even as amended, demonstrated that documents were inappropriately designated as privileged. (*Id.*)

## II. DISCUSSION

As evidenced by the "meet and confer" obligations in Rule 26, discovery is a *cooperative effort*:

> [C]ompliance with the "spirit and purposes" of the[ ] discovery rules requires cooperation by counsel to identify and fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation. Counsel cannot "behave responsively" during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation.

*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008). Where, as here, the Parties disagree as to whether one side sufficiently complied with its meet-and-confer obligations under Fed. R. Civ. P. 37, it is typically a sign that the meet and confer process was insufficient. In this case, the Court deviated from its usual procedure requiring a discovery dispute conference with the undersigned prior to filing a discovery motion because the Parties had demonstrated a willingness and ability to find areas of compromise without the undersigned's

4

assistance and to proceed with motion practice on only genuine legal disputes that they were unable to resolve themselves. The instant motion does not appear to the Court to be the latter or to even be reflective of the Parties' previous cooperation.

Fed. R. Civ. P. 26(b)(5) requires a party withholding discoverable information on the basis of privilege or work product protection to "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and [to] do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Courts interpreting this provision have held that it requires the person withholding discovery to produce a privilege log that meets certain minimum requirements. As one district court explained, "[E]ach document in a privilege log should contain details including: date, author and all recipients of the document, subject matter, and an explanation as to why the document should be privileged and not produced in discovery." *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118, 120 (E.D. Mich. 2019) (quoting *Clark Const. Grp., Inc. v. City of Memphis*, No. 01-2780, 2005 WL 6187896, at *1 (W.D. Tenn. Feb. 9, 2005)). As another described:

> Courts require the following to be included in privilege logs:
>
> > 1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.;
> > 2. The date upon which the document was prepared;
> > 3. The date of the document (if different from # 2);
> > 4. The identity of the person(s) who prepared the document;
> > 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, "including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;"
> > 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, "supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;"

>a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, "that the documents do not contain or incorporate non-privileged underlying facts;"
>7. The number of pages of the document;
>8. The party's basis "for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and
>9. Any other pertinent information necessary to establish the elements of each asserted privilege."

*Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010) (quoting in part *In re Universal Servs. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005)). Courts have found insufficient privilege logs that "utilize[ ] general categories of persons and entities without identifying anyone by name and position," *Clark*, 2005 WL 6187896, at *3; contain only "[b]oiler plate descriptions and allegations of protection or privilege," *Ypsilanti Cmty. Utils. Auth. v. Meadwestvaco Air Sys. LLC*, No. CIV. A. 07-CV-15280, 2009 WL 3614997, at *4 (E.D. Mich. Oct. 27, 2009); "identify only the dates of the documents, a brief description providing no substantive information (e.g. 'Email correspondence with Mark W. Dobbins and Matt Jean'), and the asserted privilege," *Mafcote, Inc. v. Fed. Ins. Co.*, No. 3:08-CV-11-S, 2010 WL 1929900, at *5 (W.D. Ky. May 12, 2010); or that attempt to use the subject line of emails as the sole description or summary of the contents of the listed correspondence, *id.* at 84. *Cf. Carhartt*, 333 F.R.D. at 121 (finding sufficient a privilege log where "[t]he entries clearly state[d] who authored the document, the date it was created, the recipients, including carbon copies, whether the sender or recipient [wa]s an attorney, the type of document (e.g., an email chain), the privilege claimed (e.g., attorney-client and/or work product), and a description of why privilege [wa]s claimed (e.g., it discusses or contains reflections on confidential legal advice or work product)").

Defendants' privilege log is patently deficient under this standard. It does not include sufficient information regarding the senders/recipients, preparation dates, and subject of the

6

documents at issue to allow the Court to assess Defendants' claims of privilege or other protection from disclosure. The comments section of the log, which appears to have been inserted in an attempt to justify the privilege or other protection designations, largely restates in a conclusory fashion the designation without providing sufficient information for either the Court or Plaintiffs to assess the claimed privilege/protection. There is no information about the identity of the individuals listed to allow the Court to conclude whether those individuals are attorneys. For many documents, even as amended, the log does not identify the date the document was created—as opposed to sent—so as to enable the Court to assess claims of work product protection.

Further, the Court finds Defendants' argument that the privilege that applies to an e-mail communication automatically applies to any attachment to the e-mail contrary to law and based on misreading of their cited authority. Defendants cited *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 118 (E.D. Mich. 2019), for the proposition that "confidential attachments notated in a privilege log are 'subsumed under the e-mails to which they are attached and are subject to the same claim of privilege as the principal document.' " (DN 160, at PageID # 2038.) In *Carhartt*, after concluding that the privilege log contained "at least the minimum standard of detail for a privilege log," the court explained,

> ITI also complains that the "confidential attachments" notated in the privilege log do not contain similarly detailed information. However, those documents are subsumed under the emails to which they are attached and are subject to the same claim of privilege as the principal document. See e.g., Priv. Log Nos. 0025-0039, confidential attachments to Priv. Log No. 00024, an email chain directed to attorney Anna Inch.

*Carhartt*, 333 F.R.D. at 121. The Court reads this language not as a holding that attachments are automatically privileged if the e-mail to which they are attached is privileged but instead a recognition that on the specific privilege log at issue, the description of the e-mail was sufficient to confer protection on the attachments as well. This cannot be said of Defendants' privilege log.

7

For example, Defendants admitted in their response regarding the attachments that "[m]any of the documents were designated as privileged because they existed as attachments to privileged communication, and it is likely at least some of those attachments may have been otherwise produced and in Plaintiffs' possession." (DN 160, at PageID # 2033 n.2.) Previous production of the document is inherently inconsistent with an assertion that it is being withheld on the basis of privilege or the work product doctrine. Further, some of the attachments appear to include items as to which any claim of privilege is facially invalid such as video news coverage, the Complaint in this action, or other documents that are publicly available. (*See, e.g.*, DN 149-5, at PageID # 1621 (listing files withheld on the basis of attorney client privilege and attorney work product including the subject/file names of "video of incident (news coverage).MOV," "Scott et al Complaint.pdf," and "2020.08.10 – Verified filed complaint LMG.pdf").) Defendants' cited authority simply does not support that all documents become privileged or protected by the mere fact of communication with an attorney.

While "failure to provide the court with information of sufficient specificity to permit the court to determine whether the privilege asserted applies to the withheld documents provides an independent ground for finding a waiver of any privilege or immunity," *Carfagno v. Jackson Nat'l Life Ins. Co.*, No. 5:99CV118, 2001 WL 34059032, at *2 (W.D. Mich. Feb. 13, 2001), "[w]aiver is an 'extreme sanction' typically 'reserved for cases of unjustifiable delay, inexcusable conduct, and bad faith in responding to discovery requests.'" *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2017 WL 3668848, at *2 (S.D. Ohio Aug. 24, 2017) (quoting 6 DANIEL R. COQUILLETTE ET AL., MOORE'S FEDERAL PRACTICE § 26.90[2] (3d ed. 2018)). Under the circumstances and given the combination of the numerous deficiencies with Defendants' privilege log and the Parties' less than fulsome efforts to resolve their dispute, the Court concludes

8

that proceeding to the merits of any claim of privilege or work product protection, including through an *in camera* review, is inappropriate at this stage. It appears to the Court that there is additional room for the Parties to resolve this dispute. To facilitate that process, the Court will direct Defendants to serve an amended privilege log that comports with the guidance specified herein by the deadline below. Thereafter, Plaintiffs shall identify any remaining entries as to which there is a dispute, and the Parties shall meaningfully meet and confer in an attempt to resolve these issues without further intervention by the Court.[1]  If issues, remain, the Parties shall contact the undersigned's Chambers to schedule a conference prior to further motion practice on these issues.

---

[1] By meaningfully, the Court intends the Parties to do more than exchange a single round of vitriolic and conclusory e-mails.

### III. ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiffs' Motion for *In Camera* Review (DN 149) is **DENIED WITHOUT PREJUDICE**.

IT IS FURTHER ORDERED as follows:

(1) On or before **March 19, 2024**, Defendants shall serve an amended privilege log that comports with the guidance in the instant memorandum opinion and order.

(2) On or before **April 2, 2024**, Plaintiffs shall notify Defendants of any entries on the amended privilege log as to which they claim the designation of protection is inappropriate.

(3) On or before **April 16, 2024**, the Parties shall then meet and confer regarding any disputes and shall schedule a conference with the undersigned prior to further motion practice.

Colin H Lindsay, Magistrate Judge<br>United States District Court

cc: Counsel of record
    February 27, 2024