# EXHIBIT B



BRUCE B. PAUL
MAIN LINE:    (502) 327-5400
DIRECT DIAL:  (502) 783-6245
bpaul@mcbrayerfirm.com

500 WEST JEFFERSON STREET
SUITE 2400
LOUISVILLE, KENTUCKY  40202

December 13, 2024

*VIA EMAIL*
Catherine Logue *(clogue@naacpldf.org)*
Legal defense Fund
40 Rector Street, 5th Floor
New York, NY 10006

Corey Chapiro *(corey@aclu-ky.org)*
Legal Director
ACLU of Kentucky
325 West Main Street, Suite 2210
Louisville, KY 40202

   RE: *Attica Scott, et al. v. Louisville/Jefferson County Metro Government*
      USDC, Western District of Kentucky, Case No.:  3:20-CV-00535

Dear Cate and Corey:

  I am writing in response to Cate's November 15, 2024, letter, Corey's November 18 letter, and our December 5 meet-and-confer.

### **Supplemental Production and Privilege Log**

  As promised in our meet-and-confer, our supplemental production will be complete by December 20. This will include PSU 20-045 (assuming the news story you cited is accurate), training materials, and additional documents from the privilege log issue that we have identified as able to be produced. Our records suggest PSU 20-050 was produced July 3, 2023 at BatesPSU20050000001-0009 and PSU 20-104 was produced October 27, 2022 at PSU20104000001-0161. Please let us know if you can't find them, and we'd be happy to send again.

  Regrettably we are unable to provide you with an updated log today as I had hoped because of vendor transition issues. We are hopeful we can produce that early next week but no later than December 20.

### **McKinley 30(b)(6) Issues**

  As I confirmed during our call, we stand by our position on Deputy Chief

Page 2

McKinley's preparedness for the previously conducted 30(b)(6) as articulated in our July 19, 2024, letter to Ashok Chandran. I would further note that yesterday's proposed consent decree announcement by the United States Department of Justice and Metro Louisville put the issues you have raised entirely to rest.[1] Specifically, the proposed consent decree addresses uses of force in the context of crowds as well as training for those circumstances. Metro Louisville's policies as written are consistent with Constitutional requirements, and the United States Department of Justice will be ensuring Metro Louisville fulfills its commitments on these issues.

**SOP Process Generally Topic**

You raised prior conversations about Metro Louisville designating testimony to address SOP amendments generally. For that topic, Metro Louisville designates the following testimony: Schroeder Dep. 82:24-86:11 and 86:22-87:24.

**Revised 30(b)(6) Topics**

First, recall that we will not produce a witness for the full seven hours, as Metro Louisville has already produced a witness who testified for over five hours related to five 30(b)(6) topics—much of which was explicitly included in your original 30(b)(6) notice. Your team acknowledged your ability to reduce the content to be covered in Plaintiffs' revised 30(b)(6) because of what Deputy Chief McKinley covered on behalf of Metro Louisville in her over five hours of testimony. We anticipate you will argue that 30(b)(6) should be treated differently than this one as instructed by Judge Beaton, but we see nothing in his order, the rules, or any binding authority that gives you that right. Therefore, Metro Louisville contends that a witness should only be required to testify for less than two hours. In the spirit of compromise, and to simplify the timing, Metro Louisville will agree to one or more witnesses for the below topics for a full two hours. It will be Plaintiffs' burden to seek and obtain additional time beyond that agreed-to two hours.

Regarding the 30(b)(6) Topics, below are Metro Louisville's positions:

A. City Organizational Structure

Metro Louisville designates the following testimony related to the chain of command and Emergency Operations Center topics:

- Fischer Dep. 96:23-97:24, 124:11-128:10; 129:10-20; 130:10-131:18; and 137:4-21.

---

[1] https://www.justice.gov/opa/pr/justice-department-secures-agreement-louisville-metro-government-reform-louisville-metros

Page 3

- Schroeder Dep. 66:5-67:10; 67:21-68:23, 69:1-13; 69:20-70:6; 70:11-23; 71:3-13; 110:6-16; 110:22-111:21; 189:8-192:20, 193:13-199:18; and 200:10-24.

    B. <u>Tracking of Crowd Control Devices</u>

Metro Louisville will designate one or more witnesses to testify about topics 1, 2, 3, and 4 of this category.

Metro Louisville cannot identify a witness who can reasonably prepare to testify to topic 5, "[a]ny reviews or assessments conducted by the City or LMPD regarding the amount or extent of crowd control device usage." Are you contemplating formalized written reports about the quantity of usage? That information is likely addressed in one of the above topics. That leads us to believe this topic is focused on any written or unwritten mention of less lethal uses of force. Naturally there are numerous PSUs, after-incident reports, and after-action reports that all mention or discuss uses of less lethal in given circumstances. Metro Louisville cannot reasonably review each and every written report that discusses less lethal usage. And if your topic is so broad that it contemplates informal reviews where no written report was made but conversations may have been had, Metro Louisville has no way to fully search for such reviews and memorize the details of such reviews to describe at this deposition. Simply stated, this topic is not proportional to the case or even possible to satisfy.

    C. <u>LMPD Internal Oversight Mechanisms</u>

Metro Louisville will designate a witness to testify about topic 1 of this category. The PSU (2) and PIU (3) topics, as previously explained, are not relevant to Plaintiffs' claims or Defendants' defenses in this case. Only pre-May 2020 PSUs and PIUs are relevant to this matter considering Plaintiffs' theories of liability under binding Sixth Circuit authority, and, therefore, producing a witness to discuss these irrelevant topics is not appropriate. The same principle applies to topic 4, as it, too, would go to investigations into incidents during the summer of 2020 and not before.

    D. <u>Training of Officers</u>

The four topics in your "Training of Officers" category are irrelevant to your claims and defenses and not proportional to the needs of this case. Upon review of the claims in Plaintiffs' Amended Complaint, a lack of training is not an alleged cause of Plaintiffs' alleged injuries. Although inadequate training may serve as a ground for § 1983 municipal liability, the Amended Complaint does not include that theory of liability. Instead, Plaintiffs allege the other three grounds for § 1983 liability: the

Page 4

---

existence of an official policy, decisionmaker ratification, and acquiescence. (Amended Compl. ¶¶ 288, 293, 301, and 304.)

Even if training were a relevant topic to Plaintiffs' claims, your all-inclusive language that demands a witness to testify about "all training(s)" required for all officers at LMPD generally in addition to the SRT trainings is disproportional to the needs of this case. As previously noted, when Plaintiffs deposed then-Assistant Chief McKinley related to similar topics subsequent to 2020, you demanded she report details on every single training session given, and the contents presented at every training session. No one then in charge of training is still in that position, and there is simply no reasonable way for Metro Louisville to prepare a witness to satisfy the impossible scope of the four training topics.

    E.   <u>Documentation</u>

Metro Louisville will designate a witness to testify about topics 3 and 4 of the "Documentation" category. However, Metro Louisville cannot reasonably search for "all documentation completed concerning" all uses of less lethal and orders of dispersal because there are simply too many. It therefore cannot produce a witness to testy about topics 1, 2, and 5 of this category. The timeframe you have identified extends over six months, and, as you know, documentation related to incidents of less lethal usage and dispersal orders likely extends into the thousands of pages. Responsive documentation may extend into letters and emails circulated to and from government employees and representatives and the public related to these issues, and no one witness can be responsible for searching and memorizing the contents of all that "documentation." And while you might be content that an Incident Action Plan is a singular document that was identical in some ways on many days, such plans were created nearly every day, and no witness can be reasonably expected to read and make notes on each one, identifying differences among the documents, and then researching why those differences may be present. You no doubt seek to ask "why" questions related to these documents, which were prepared by different people on different days after those people had conversations and exchanged other forms of communication with other people. No Metro Louisville Witness can capture all the information that lies behind the words of those documents and be ready for questions that you may ask.

    F.   <u>Participation in This Litigation</u>

As we discussed, Metro Louisville will designate a witness to testify to Metro Louisville's "efforts to retain and search for responsive documents in its data stores, including cell phones provided by the City to LMPD officers." However, Metro Louisville is not able to produce a witness to comb through Metro Louisville's

Page 5

_____

interrogatory answers and provide detailed answers regarding how and why the person who verified each of those answers did so.

    Metro Louisville reserves all rights available to it on these issues, including the right to reassert positions previously argued to you and the Court but not expressly included in this communication.

    Very truly yours,

    McBRAYER, LLC

    Bruce B. Paul

BBP:sjm