## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

ATTICA SCOTT, CORBIN SMITH, KAYLA MEISNER, TYLER WEAKLEY, STEVIE SCHAUER, WILLA TINSLEY, PATRICK MOORE, and the KENTUCKY ALLIANCE AGAINST RACIAL AND POLITICAL REPRESSION, on behalf of themselves and all others similarly situated,

        Plaintiffs,

   v.

LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT, GREG FISCHER, individually and in his official capacity as Mayor of Louisville, ROBERT SCHROEDER, individually and in his official capacity as Interim Chief of the Louisville Metropolitan Police Department, LaVITA CHAVOUS, individually and in her official capacity as Assistant Chief of the Louisville Metropolitan Police Department, and LOUISVILLE METROPOLITAN POLICE DEPARTMENT OFFICER "J." JOHNSON, LOUISVILLE METROPOLITAN POLICE DEPARTMENT OFFICERS JOHN DOES #1-#15 and JANE DOE #1, in their individual capacities,

        Defendants.

Civil Action No. 3:20-cv-0535 (BJB) (CHL)

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION FOR PROTECTIVE ORDER

The Court should deny Defendants' Motion for a Protective Order related to Plaintiffs' Second Amended Notice of Deposition of Defendant Louisville/Jefferson County Metro Government.

## RELEVANT BACKGROUND

During the summer of 2020, the City of Louisville subjected Plaintiffs Attica Scott, Corbin Smith, Kayla Meisner, Tyler Weakley, Stevie Schauer, Willa Tinsley, Patrick Moore, and The Kentucky Alliance Against Racial and Political Repression (collectively "Plaintiffs") to unlawful and excessive force in violation of their First and Fourth Amendment rights. *See generally* ECF No. 32 (Pls' First Am. Compl.). In response, Plaintiffs filed this lawsuit seeking to permanently enjoin Defendants from use of crowd control weaponry on peaceful protesters and to promulgate official policies restricting the use of such weapons. *Id.* Plaintiffs further seek monetary damages for their loss of rights, along with physical and emotional injuries, punitive damages, and attorneys' fees and costs. *Id.*

Since May of 2023, Plaintiffs have sought the testimony of Defendant Louisville/Jefferson County Metro Government ("the City") pursuant to Rule 30(b)(6). Specifically, Plaintiffs seek the testimony of the City regarding the policies and practices that contributed to the harms they suffered as a result of these unlawful actions, including those related to (1) City Organizational Structure; (2) Tracking of Crowd Control Devices; (3) LMPD Internal Oversight Mechanisms; (4) Training of Officers; (5) Documentation; and (6) Participation in this Litigation. As outlined below, each of these topics is plainly relevant to the Parties' claims and defenses.

Plaintiffs first issued a Notice of Deposition of Defendant Louisville/Jefferson County Metro Government on May 5, 2023. *See* ECF No. 151-1 (Pls' Original Notice of Dep.) Pursuant to Rule 30(b)(6)). On May 17, 2023, Defendants responded objecting to portions of that Notice. *See* ECF No. 151-2 (May 17, 2023, Letter from B. Paul). The Parties met and conferred regarding Defendants' objections on June 15, 2023, during which counsel discussed appropriate limitations and provided clarity regarding the scope and meaning of the relevant topics. *See* ECF No. 151-3

(Chandran Decl.). On June 30, 2023, Plaintiffs served an Amended Notice of 30(b)(6) Deposition intended to address the objections discussed by the Parties. *See* ECF No. 151-6. On July 12, 2023, Defendants filed their Motion for a Protective Order. *See* ECF No. 144.

On February 21, 2024, this Court instructed the Parties to meet and confer regarding Defendants' objections to both the 30(b)(6) notice and Plaintiffs' Notice of Deposition of Mayor Craig Greenberg and advise the Court whether a compromise could be reached regarding both matters. *See* ECF Nos. 181, 184 at 78:15–79:1. The Parties subsequently informed the Court that a compromise could likely be reached which would moot Defendants' objections to the order compelling the deposition of Mayor Craig Greenberg and "narrow the scope of Defendants' pending motion to quash Plaintiffs' Rule 30(b)(6) deposition notice." *See* ECF Nos. 183 at 2 n. 1, 187. Relying on these representations, on March 12, 2024, this Court denied Defendants' respective motions as moot. *See* ECF Nos. 188, 186.

As represented to the Court, the Parties agreed to approach the two depositions in stages: First, the Parties would conduct a limited deposition of a witness designated to speak authoritatively to topics pertaining to the current policies and procedures. Then, the Parties would "meet and confer after that deposition to discuss the remainder of the topics listed in Plaintiffs' initial 30(b)(6) notice." *See, e.g.,* ECF No. 190.

On July 12, 2024, following the deposition of Assistant Chief Emily McKinley, Plaintiffs provided Defendants with a Second Amended Notice of Deposition of Defendant Louisville/Jefferson County Metro Government, as agreed. This notice was significantly revised. Specifically, Plaintiffs narrowed the relevant timeframe, struck topics for which the Parties agreed to designate testimony from Named Defendants, and added or removed language to provide additional clarity on the scope of the testimony sought (e.g. clarifying that Plaintiffs sought only

information regarding mechanisms for investigating "excessive force complaints, complaints specific to civil disturbances, or complaints regarding other mass events" as opposed to investigations generally). *See* Exhibit A (Second Am. Notice of Dep.). On July 30, 2024, Defendants responded raising generalized objections regarding the burden, relevance, and meaning of the noticed topics and arguing, for the first time, that the 30(b)(6) deposition ought to be treated as an extension of the limited deposition and therefore conducted within the remaining hour and fifty-five minutes. The Parties were unable to negotiate a resolution and, on August 1, 2024, jointly requested the guidance of the Court in resolving this dispute.

Following an attempt to settle this lawsuit, the Parties resumed negotiations regarding Plaintiffs' Second Amended 30(b)(6) Notice. On November 15, 2024, in an effort to be responsive to Defendants' most recent objections, Plaintiffs narrowed the scope of the notice for a third time, through a series of edits aiming to provide greater clarity regarding the intended meaning of the word "process" (e.g. clarifying that Plaintiffs sought testimony regarding the official policies for approval and documentation of use of crowd control devices during the summer of 2020). *See* ECF No. 215-2 (Pls' November Notice). The Parties met and conferred on December 5, 2024, and Defendants stood by their objections regarding the breadth and burden of several noticed topics, including topics on training materials, official documentation, and internal investigations.

Given the City itself is best positioned to determine the scope of relevant testimony—such as which, if any, trainings were "developed or provided to LMPD officers in preparation for anticipated protests in 2020"—Plaintiffs informed Defendants that they welcomed the City to propose appropriate limiting constructions that might better enable both Parties to narrow their preparation for this deposition. Plaintiffs further agreed to consider whether additional topics could

be addressed through the designation of testimony by Named Defendants as testimony on behalf of the City, without need for further questioning.

Following that meeting, Defendants agreed to produce a deponent to testify to eight of the noticed topics. As to the remaining topics, Defendants reiterated their generalized concerns about burden, objected to testimony regarding internal oversight mechanisms based on relevance, and, for the first time, raised objections to testimony regarding training on the ground of relevance. *See, generally,* ECF No. 215-3. Defendants further reiterated their position that Plaintiffs were entitled to only an hour and 55 minutes to conduct the deposition, though offered a "compromise" allowing Plaintiffs five additional minutes for a total of two hours. *Id.* In subsequent communications, the Parties were able to narrow the issues for this Court, however, Defendants continued to maintain their nonspecific objections regarding burden and relevance related to 24 of the noticed subtopics and, on January 10, 2025, moved for a protective order preventing Plaintiffs from seeking any testimony related to those topics.[1]

Given the long-established need for authoritative testimony regarding the policies and practices in place during the summer of 2020—including the training officers received on protest response, the internal oversight mechanisms for reviewing officer actions during the protests, and the documentation officers were required to maintain throughout the summer—Plaintiffs oppose that order and ask the Court to require Defendants to produce a knowledgeable and adequately prepared deponent, or deponents, to testify on behalf of the City regarding each topic in the Second Amended Notice of Deposition dated November 15, 2024, and to produce said deponent(s) for the full seven hours required under Fed. R. Civ. P. 30(d)(1). *See also* Fed. R. Civ. P. 30 advisory

---

[1] Attempting to conflate the two depositions, Defendants styled their motion as a combined Motion for Protective Order and Response to Plaintiffs' Motion to Compel. As required by the local rules and consistent with the well-documented history of this dispute, Plaintiffs replied separately to Defendants' Opposition on January 24. *See* ECF No. 219 (Pls.' Reply in Further Supp. of Mot. to Compel).

committee's note to 2000 amendment (explaining the application of the durational limit to depositions under 30(b)(6)).

## ARGUMENT

Plaintiffs' Notice of Deposition of Louisville/Jefferson County Metro Government seeks information within the permissible scope of discovery as established by Fed. R. Civ. P. 26(b)(1). Further, each of the topics listed—as edited following numerous conferences with Defendants— provide more than "reasonable notice of what is called for and what is not." *Wright v. State Farm Mut. Auto. Ins. Co.*, No. 321CV00563BJBCHL, 2022 WL 2392565, at *10 (W.D. Ky. July 1, 2022) (Lindsay, J.) (citation omitted). Thus, this Court should deny Defendants' Motion for a Protective Order and require the City to produce a witness or witnesses prepared to testify to each noticed topic for the full durational limit required under the Federal Rules of Civil Procedure.

Rule 26(b)(1), which Defendants recognize as "the touchstone for the scope of civil discovery," ECF No. 215-1 at 6, allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ." *Eckles v. Archer-Daniels-Midland Co.,* No. 521CV00046BJBHBB, 2024 WL 967017, at *3 (W.D. Ky. Mar. 6, 2024) (citation omitted). This is a low bar. Relevant evidence is presumptively discoverable unless the party opposing discovery can meet the "heavy burden" of demonstrating good cause, or that the noticed topics "[are] of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Janko Enterprises, Inc. v. Long John Silver's, Inc.,* No. 3:12-CV-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013) (further explaining that a party seeking a protective order must "demonstrate[e] that disclosure will work a clearly defined and very serious injury") (citation omitted).

There can be no doubt that each of the topics included in Plaintiffs' Notice satisfies the relevance standard. As this Court has long recognized, Plaintiffs seek the official testimony of the City regarding the policies and practices that governed preparation for, response to, and internal review following the protests of 2020. Discovery on each of these topics is essential if Plaintiffs are to explore and establish the liability of the City under *Monell* as well as the constitutional violations alleged in this case—they relate directly to the City's organizational structure; training, supervision, and oversight of officers; control, provision and authorization of use of crowd control devices; and documentation and storage of relevant documents and information. Each is thus an appropriate topic for discovery unless Defendants affirmatively establish that preparing a designee to testify is unduly burdensome or the information is unreasonably cumulative or duplicative considering the needs of the case.

Defendants fail to meet that "heavy burden." Rather, Defendants raise only generalized objections regarding cost and the voluminous nature of the records, without specific evidentiary support. These boilerplate objections are improper and insufficient to "demonstrate[e] that disclosure will work a clearly defined and very serious injury." *Janko*, 2013 WL 5308802, at *2 (internal citations omitted). Thus, because Plaintiffs' notice satisfies the requirements established in the Federal Rules of Civil Procedure, this Court should deny Defendants' motion as to each of the 24 challenged subtopics.

## I.    The Challenged Topics Are Relevant

Pursuant to Rule 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. . . ." Fed. R. Civ. P. 26(b)(1). This directive is to be interpreted broadly: "It is well established by now that this language is broadly construed by the federal courts to include any 'matter that bears

on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case.'" *See United Parcel Serv. Co v. DNJ Logistic Grp., Inc.*, No. 3:16-CV-00609-GNS, 2018 WL 3199475 at *8 (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351(1978)). As such, the scope of inquiry permitted in discovery is "significantly broader than that permitted at trial" and "the information sought need not, standing alone, prove or disprove a claim or defense, or even have strong probative force." *Id.* at *9 (citation omitted).

The need for broad discovery is particularly acute in suits alleging municipal liability, which often necessitate substantial discovery into City operations, policies, and practices. As such, "[d]istrict courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued only the individuals directly involved in the deprivation of his rights." *Penman v. Correct Care Sols., LLC*, No. 518CV00058TBRLLK, 2021 WL 3134255, at *6 (W.D. Ky. July 23, 2021) (citation omitted).

All topics in Plaintiffs' Notice are relevant to the City's potential liability under *Monell*— as well as to the underlying constitutional claims. Defendants nonetheless argue that preparing a witness to testify regarding topics related to three subjects—internal oversight, training, and the City's responses to interrogatories[2]—will lead to "no evidence relevant or admissible to Plaintiffs claims or Metro's defenses." ECF No. 215-1 at 2. As outlined below, each of these arguments is unsupported by the facts or law.

---

[2] Defendants challenge the relevance of (1) three of four topics under "LMPD Internal Oversight Mechanisms" (Topics 2, 3, and 4); (2) all topics under "Training of Officers"; and (3) Topic 2 under "Participation in this Litigation." They do not challenge the relevance of any of the remaining topics for which they seek a protective order. Thus, Plaintiffs understand Defendants to concede the relevance of all remaining topics, including those under "Tracking of Crowd Control Devices," "Documentation," and "City Organizational Structure."

### A.  *Topics 2, 3, and 4 Under Internal Oversight Mechanisms*

Plaintiffs seek the City's official testimony regarding internal oversight mechanisms in place during the summer of 2020, including the operations of LMPD's Professional Standards Unit ("PSU") and Professional Integrity Unit ("PIU"). Specifically, Plaintiffs seek testimony regarding the hiring of investigators; training on how to investigate excessive force, protest, and other First Amendment complaints; the methods by which an investigation may be opened; the policies about conducting, reviewing, and closing an investigation, including imposition of discipline; and the steps taken and conclusions reached by the City in response the protests of 2020. Plaintiffs further seek testimony regarding any other mechanisms by which the City has conducted investigations into excessive force complaints and complaints specific to civil disturbances and other mass events, and any discipline imposed as a result. *See* ECF No. 215-2 (Pls' Nov. 2024 Notice).

Plaintiffs allege that the Louisville Metro Police Department acted pursuant to official city policy in violating the rights of Plaintiffs throughout the summer of 2020. Discovery has made clear that these policies were promulgated, ratified, and acquiesced to at the highest levels of City government, including through direct orders, affirmative approval, and failure to investigate or otherwise intervene. Testimony regarding the available oversight mechanisms and whether, when, and how those mechanisms were utilized during the protests is relevant to Plaintiffs' claims in multiple independent ways:

First, the investigations that were ultimately conducted into the events of 2020 reach *conclusions*—signed by both the Chief of Police and the Mayor—about whether particular uses of force were within official policy. For example, at Plaintiff Attica Scott's request, an investigation was initiated into the use of tear gas to disperse peaceful crowds on May 29, 2020. That investigation concluded that though "Ms. Scott's participation [in the protest] was of a non-violent

nature," ECF No. 151-13 at L0152948, and "[i]t is likely she would not have heard [a dispersal order] from the distance over the loud crowd," ECF No. 151-14 at L0152952, LMPD's use of tear gas was "in adherence to Standard Operating Procedure." *Id*.[3] Both the Mayor and the Chief of Police approved these conclusions. ECF No. 151-15 at L0152939. Such affirmative approvals are plainly relevant to establishing the existence of an official policy, that officer actions were consistent with that policy, and that officials with final decision-making authority approved of, ratified, or acquiesced to that policy. *See, e.g., Rideout v. Shelby Twp.,* 691 F. Supp. 3d 816, 829 (E.D. Mich. 2023) ("ratification of a single violative act is enough for municipal liability to attach") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)); *Myers v. City of Cincinnati*, 14 F.3d 1115, 1118 (6th Cir. 1994).

Second, the City's policies and practices related to oversight are evidence supporting a pattern of failing to timely investigate, discipline, or otherwise intervene in allegations of unconstitutional conduct. As this Court held: the City's "failure to meaningfully investigate and punish allegations of unconstitutional conduct" is relevant to the question of "whether [a]n official acting with final-decision-making authority [ratified] the unconstitutional acts of its employees." *See* ECF No. 42 at 5 (Mem. Opinion & Order) (citing *Wright v. City of Euclid*, 962 F.3d 852, 882 (6th Cir. 2020)). Defendants never moved for reconsideration, but now attempt to disturb that ruling by limiting Plaintiffs' access to discovery. Setting aside the merits of this argument as described above and below, the law of the case doctrine provides that "'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Westside Mother v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569–70 (6th Cir. 2004)). Both clear error *and* manifest injustice are

---

[3] These investigations are also plainly relevant to the extent investigators made factual findings relevant to the facts and circumstances at issue in Plaintiffs' substantive claims.

required to deviate from the law of the case. *See, e.g.*, *Payne v. The Courier-Journal*, 193 F. App'x 397, 400 (6th Cir. 2006). Yet, Defendants do not establish clear error and are silent on what "manifest injustice" would result from their having to designate a witness to testify about City's internal oversight mechanisms. That alone warrants rejection of their argument. *Id.*

Moreover, since that ruling, Defendants have repeatedly testified to their immediate awareness of concerns about the use of tear gas to disperse peaceful protesters—within hours of its first usage on May 28, 2020.[4] Yet over the next several days, Plaintiffs were tear gassed and subjected to other crowd control weapons time after time, night after night. During this same period, Defendants failed to utilize internal oversight mechanisms to restrict or end this activity. This evidence points to a "pattern of inadequately investigating similar claims"—many of which arose *before* harms to Named Plaintiffs, including members of the Kentucky Alliance. *See Kirk v. Calhoun Cnty.*, Nos. 19-2456 &20-1365, 2021 WL 2929736, at *7 (6th Cir. July 12, 2021). Plaintiffs are entitled to question the City about that pattern, including through questioning about the process for opening and conducting an investigation or the availability of other methods of oversight (i.e. whether an investigation or other intervention could have been opened *before* Plaintiffs were subjected to such force, and whether such an intervention could have prevented subsequent uses of force).[5]

Defendants, however, claim that a subset of the topics relating to the City's oversight and investigation of such incidents are not relevant to Plaintiffs' claims because the investigations

---

[4] *See, e.g.,* Exhibit D (Excerpt from Dep. of Greg Fischer) at 174:21–175:7 (affirming the mayor became aware of the first use of tear gas "within the hour"); Exhibit E (Excerpt from Dep. of LaVita Chavous) at 204:21–25 (Q: "And after you learned about what happened to Representative Scott and peaceful protesters being impacted by tear gas, did you take any steps to restrict the use of tear gas?" A: "I don't believe so at that time.").

[5] For example, to know whether the City failed to timely initiate investigations, Plaintiffs must understand the process by which investigations generally could be started. Likewise, to know whether any failure to investigate was the result of a pattern and practice, Plaintiffs must know the hiring and training procedures for investigators. To know whether the City could have intervened in other ways, Plaintiffs must know what other mechanisms for investigating and disciplining officers were available in 2020, and so forth.

produced postdate the allegations of unconstitutional conduct being investigated. *See* ECF 215-1 at 19-20 (citing *Pineda v. Hamilton Cnty., Ohio,* 977 F.3d 483, 495 (6th Cir. 2020)).

As outlined above, Defendants' arguments misapprehend both Plaintiffs' claims and the relevant legal standard. First, Plaintiffs' theories of municipal liability are not analogous to those put forth in *Pineda*. Moreover, Defendants cannot restrict access to evidence of a *Monell* violation, and then defend their actions by claiming that Plaintiffs failed to present evidence of municipal liability.[6] Second, the City's investigation into this case and its response to that investigation *can*, standing alone, establish municipal liability where a final policymaker *ratifies* the act in question. *See, e.g., Rideout,* 691 F. Supp. at 829 ("ratification of a single violative act is enough for municipal liability to attach") (citations omitted); *see also Lentz v. City of Cleveland*, 333 F. Appx 42, 47 (6th Cir. 2009) (holding "a subordinate's decision may support municipality liability if ratified by an authorized policymaker") (citation omitted); *Meyers*, 14 F.3d at 1118 (noting that ratification applies when a policymaker exercises "authority to measure the [subordinate's] conduct for conformance with their policies"). This Court has explicitly recognized this potential avenue for liability, and it remains true that a single instance of ratification by a final policymaker—such as a finding affirmatively *approving* unconstitutional conduct—may suffice. *See,* ECF No. 42 at 5 (citing *Pembaur*, 475 U.S. at 480). More importantly, the question for the Court is not whether evidence about internal oversight is sufficient to prove causation (here, it is), but whether the noticed topics are *relevant* to the underlying claims and to the City's potential liability. And relevance is a far lower standard that is more than satisfied in this case: Testimony regarding the available mechanisms for oversight and whether, when, and how, those mechanisms were utilized

---

[6] Defendants have made clear that they intend to challenge Plaintiffs' allegations of municipal liability on the basis that under *Pineda*, Plaintiffs have failed to allege a sufficient pattern of failure to investigate to support a theory of ratification. Plaintiffs have a right to explore that position through discovery.

is relevant to Plaintiffs' *Monell* claims in myriad, independent ways, as described above. *See supra*
at 9–10; *United Parcel Serv. Co.,* 2018 WL 3199475 at *8.

### B.  All Topics Under "Training of Officers"

Whether and how LMPD trained officers to respond to protests and use force is relevant to
Plaintiffs' *Monell* claims. For example, a Department's training is an official policy and procedure
that dictates the actions of officers. Training can also demonstrate "a custom of allowing excessive
force" separate and apart from a failure to train theory. *Wright*, 962 F.3d at 880; *see also id.* at 860
(finding "sufficient evidence of municipal policy" where "the evidence against the City includes .
. . [a video] in which [a] comedian makes remarks about Rodney King and police misconduct that
are highly inappropriate for law-enforcement instruction" and "an offensive cartoon in the City's
police-training manual that portrays an officer in riot gear beating a prone and unarmed civilian
with a club, with the caption 'protecting and serving the poop out of you.'").[7]

Defendants, however, state, without legal support, that any inquiry into how LMPD trains
officers to use force or respond to protests is necessarily irrelevant because "the Amended
Complaint does not include [inadequate training as a] theory of liability," ECF No. 215-1 at 22.
First, failure to plead a specific theory of liability does not bar a party from raising that theory
should discovery ultimately support it. *See e.g., Kopper Glo Fuel, Inc. v. Island Lake Coal Co*.,
436 F. Supp. 91, 99 n.4 (E.D. Tenn. 1977) (granting a motion to conform pleadings to new
evidence by adding a new theory of liability even after trial). The availability of such a remedy is
consistent with the very purpose of discovery. Second, the standard here is whether the information
sought is *relevant* to any claim, not whether the specific topic was explicitly raised in a complaint.

---

[7] Recognizing as much, Plaintiffs allege that "Defendant City of Louisville, acting through the Louisville
Metropolitan Police Department ("LMPD"), is responsible for the policy, practice, supervision, implementation,
and conduct of all LMPD matters, including the appointment, training, supervision, and conduct of all LMPD
personnel." ECF No. 32 at 4.

Information relating to officer training, as discussed, can support Plaintiffs' claims of municipal liability on theories that Defendants do not dispute are raised in this case, such as the "existence of an official policy, decisionmaker ratification, and acquiescence," ECF No. 215-1 at 22, and exploration into training processes will shed light on official policy with respect to use of force and protest response as well as what LMPD communicates about those policies to its officers. This information is integral to determining whether officers' actions were consistent with the City's directives and training. Indeed, discovery to date indicates that training played a key role in shaping protest response. *See, e.g.,* Exhibit B (Civil Disturbance Basic Training Course at L02101) (depicting a "riot helmet" with the words "If you can read this, you're about to get your head kicked in" under the title "Show of Force"); *see also* U.S. Dep't of Just. et al , *Investigation of the Louisville Metro Police Department and Louisville Metro Government*, at 58 (Mar. 8, 2023), www.justice.gov/opa/press-release/file/1573011/dl ("LMPD's one-day training on civil disturbances contains inappropriate content, poor guidance, and improper imagery, which primed officers to escalate police protests and predictably led to officers using aggressive tactics and excessive force).[8]

## C. *Participation in this Litigation*

Finally, Plaintiffs seek information relating to the storage and retention of evidence as well as to the City's interrogatory responses. Defendants claim that the latter is an improper topic to explore in a deposition because it is "'discovery about discovery,' which is disfavored by courts in this and other circuits." ECF No. 215-1 at 24. But the cases cited by Defendants make clear that such topics are appropriate where, as here, "there is reason to distrust the responding party's

---

[8] This Court may take judicial notice of the Report. *Stucker v. Louisville Metro Gov't,* No. 23-5214, 2024 WL 2135407, at *12 (6th Cir. May 13, 2024) ("The DOJ Report may be judicially noticed under FRE 201(b)(2) because its sources 'cannot reasonably be questioned.' Under our authority to take judicial notice and our caselaw determining that such reports may be relevant to proving a policy or custom under a *Monell* claim.").

diligence." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 125 (E.D. Mich. 2019). For example, after Defendants took the position that PIU files were not in LMPD's possession, custody, or control due to a joint partnership between LMPD and federal law enforcement officers, Plaintiffs inquired about steps taken to obtain those files, and Defendants refused to provide an affidavit or otherwise answer questions about whether searches had been undertaken, instead stating, "you are entitled to ask factual questions about my client's searches in a deposition covering the topic of its searches for responsive PIU documents." ECF 151-8 at 3. Defendants cannot both direct Plaintiffs to seek such testimony and seek a protective order preventing Plaintiffs from obtaining the same. Thus, this case falls within the recognized category of cases where such discovery is appropriate.[9]

## II.    Defendants Have Not Established that the Otherwise Relevant Evidence Is Beyond the Scope of Rule 26(b)(1)

Relevant evidence is presumptively discoverable unless the party opposing discovery meets the "heavy burden" of establishing that the evidence is nonetheless beyond the scope established in Rule 26(b)(1) because it is unduly burdensome or unreasonably cumulative. To obtain a protective order, "the moving party must articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought." *United Parcel Serv. Co,* 2018 WL 3199475, at *10. Defendants' vague and conclusory assertions of burden do not satisfy that standard. *Id.* (explaining that a movant must make "a particularized showing. [. . .] Vague and conclusory allegations are not enough") (citations omitted).

---

[9] Moreover, throughout Defendants' Motion for Protective Order, the City claims to be unable to identify which documents are responsive to the noticed topics and thus necessary to review in preparation to testify. *See e.g.* ECF No. 215-1 at 22 (explaining that it is "impossible" to determine what documentation was maintained regarding decisions to disperse or use crowd control as well as what planning documents exist). These assertions clearly raise concerns regarding the City's diligence in answering interrogatories and requests for production, which likewise required the City to search internal data stores and records and speak with knowledgeable decisionmakers in order to respond on behalf of Louisville/Jefferson County Metro Government.

### A. Defendants Have Not Established that the Requests are Unduly Burdensome

It is well established that "[g]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when a party fails to submit any evidentiary declarations supporting such objections." *Janko,* 2013 WL 5308802, at *7 (citation omitted). Such is the case here, where Defendants allege only that it will take "weeks (if not months) to prepare such testimony," ECF No. 215-1 at 2, and point broadly to the costs of prior document productions.[10] *Id.* at 2–3. Defendants do not explain how producing and preparing a designee to testify regarding the noticed topics—the discovery issue at hand—will cause significant expense, let alone "serious injury." Defendants provide no specific details or evidentiary support regarding the basis for their assertions that Plaintiffs' narrow topics implicate such a voluminous record.[11] These conclusory assertions fall woefully short of establishing an undue burden.

Moreover, "[g]ood cause will not be shown merely because the disputed discovery may be inconvenient or expensive." *United Parcel Serv. Co.*, 2018 WL 3199475, at *10 (citation omitted). Rather, "Rule 30(b)(6) *requires* . . . designees to review all matters known or reasonably available to the corporation in preparation for the deposition, even if the documents are voluminous and burdensome to review." *Beattie v. CenturyTel, Inc.,* No. 02-10277, 2009 WL 5066676, at *6 (E.D. Mich. Dec. 16, 2009) (citation omitted). This is so because "Rule 30(b)(6) is designed to [minimize

---

[10] Plaintiffs do not seek further productions or document searches. Rather, Plaintiffs seek the official testimony of the City regarding the interpretation and meaning of the policies, trainings, and other documents that have been produced, or should have been produced, in response to requests for production. Thus, the costs associated with e-discovery and prior productions are not relevant to the alleged burden caused by the challenged topics.

[11] *See e.g.,* ECF No. 215-1 at 18 ("Metro cannot reasonably be expected to have a person study, memorize, and testify about all of the hundreds if not thousands of pages of reports prepared that mention the use of crowd control devices. . ."); *id.* at 23 ("Documentation related to incidents of less lethal usage and dispersal orders likely extends into the thousands of pages. Responsive documentation might include letters and emails circulated to and from government employees and representatives and the public related to these issues.") Further, as previously clarified, Plaintiffs do not consider video footage responsive to any of the noticed subtopics under "Documentation." *See also* ECF 151 at 12.

costs] and offers a path to reduce the number of depositions sought by a party . . ." *Schnatter v. 247 Grp., LLC,* 343 F.R.D. 325, 334 (W.D. Ky. 2022).

Indeed, any claims of undue burden are not supported by the record. Defendants have been in possession of the noticed topics for months and Plaintiffs have indicated flexibility to determine a mutually agreeable date for the deposition(s) as well as willingness to pre-designate specific documents we intend to cover—though not an exhaustive list of documents—and to do so on a timeframe that Defendants' believe would provide "sufficient time to prepare." *See* Exhibit C (January 8, 2025, Email from C. Logue).[12] Further, Plaintiffs have narrowly tailored the 30(b)(6) topics to focus on policies and procedures, information which should be readily available to the City. And contrary to Defendants' assertions, Plaintiffs do not require the designee to "memorize" each of these records. Plaintiffs have never objected to deponents reviewing documents during the deposition and have consistently provided copies of any documents within their possession during questioning regarding their substance. Plaintiffs have no objection to continuing to do so and remain committed to ensuring that the designee has the information necessary to meet their obligations. Under these circumstances, the generalized need for time to prepare is not considered an undue burden, but a standard requirement of Rule 30(b)(6).

Given Defendants' failure to object with adequate specificity, the Court's inquiry should end there. Nevertheless, it is worth noting that Plaintiffs' interest in obtaining this long-sought discovery—as well as the public interest—plainly outweigh any alleged hardship to Defendants.

---

[12] Noting that "[i]n cases in which the witness will be questioned about numerous or lengthy documents, it is often desirable for the interrogating party to send copies of the documents to the witness" in advance of the deposition, citing Fed R. Civ. P. 30(d)(1) advisory committee note 2000 Amendment, Defendants requested that Plaintiffs agree to "take that step" in an effort to "bridge the gap on some of these issues." *See* ECF No. 215-5. The following day, Plaintiffs agreed to provide "a list of relevant documents that we intend to cover," though noted that the list "would not be exhaustive." *See,* Ex C. Plaintiffs further proposed discussing a timeframe for sharing those documents with sufficient time to prepare. *Id.* Defendants dismissed this proposal writing that Plaintiffs "need not bother providing such a list where they have no intent of limiting themselves to it." *See* ECF No 215-1 at 18 n.5 (misquoting Plaintiffs' as offering to provide a list of "relevant topics," not documents).

*See United Parcel Serv. Co.,* 2018 WL 3199475, at *10 (explaining that "federal courts have superimposed a somewhat demanding balancing of interests approach. . . .compar[ing] the hardship to the party against whom discovery is sought against the probative value of the information to the other party" as well as "the relevant public interests"). Plaintiffs seek the official testimony of the City regarding policies, documentation, training, and internal oversight mechanisms, followed, deviated from, maintained or otherwise used to instruct officers in responding to protests during the summer of 2020. This testimony "cannot be obtained from another 'more convenient, less burdensome or less expensive' source." *Schnatter,* 343 F.R.D. at 333–34 (Lindsay, J.). To the contrary, the City "is uniquely situated with knowledge highly relevant to the issues in this case," *id.*, and a 30(b)(6) deposition allows Defendants to identify and designate those witnesses knowledgeable of these facts and circumstances. *Id.* at 335 ("Further, corporations have a 'clear duty to make a good faith, conscientious effort to designate appropriate persons' and prepare them accordingly.") (Citations omitted). Likewise, information about law enforcement's policies and procedures for protest response is information for which the public interest weighs in favor of disclosure, not secrecy. For these reasons, the Court should reject each of Defendants arguments pertaining to the burden of preparing a designee.

### B.   Defendants Have Not Established that the Requests Are Unduly Cumulative

Defendants also argue that the Topics 1, 2, and 5 under "Documentation" are unreasonably duplicative "because Plaintiffs already have access to the voluminous documentation and do not need Metro to interpret it . . ." ECF No. 215-1 at 23. The law is clear that "[t]he fact that [defendant]. . . may have previously provided business records or other documents that bear on the subject matter of [the] Rule 30(b)(6) deposition topics does not render the testimony of its corporate representative out-of-bounds." *Green*, *v. Platinum Restaurants Mid-Am., LLC*, No. 3:14-

CV-439-GNS, 2017 WL 11682937 at *18 (W.D. Ky. Oct. 24, 2017). Rather, because a 30(b)(6) deposition is the only way to obtain an entity's official positions, courts are wary to quash topics in a notice as duplicative. *Edwards*, 331 F.R.D. at 123 ("The Court agrees that the questions are duplicative, but as noted, plaintiff is entitled to have a Rule 30(b)(6) deposition to bind the corporation.") (citation omitted). As this Court has explained, even "prior deposition testimony from individual fact witnesses does not ordinarily relieve a corporation from designating a Rule 30(b)(6) witness because of two key differences between them: Rule 30(b)(6) witnesses bind the entity they are representing and are responsible for providing all information known or reasonably available to the entity." *Schnatter,* 343 F.R.D. at 333 (Lindsay, J.) (citation omitted).

Thus, "the City's production of documents . . . [does not] excuse the City from providing a representative or representatives to testify." *White v. City of Cleveland*, 417 F. Supp. 3d 896, 909 (N.D. Ohio 2019); *accord Green*, 2017 WL 11682937 at *18; *Richardson v. Rock City Mech. Co., LLC*, No. 3-09-0092, 2010 WL 711830, at *7 (M.D. Tenn. Feb. 24, 2010) ("The Court agrees with the plaintiff that, simply because the defendant has previously produced documents, the plaintiff is not precluded from inquiring about those documents at a Rule 30(b)(6) deposition.") (citation omitted). This is so because, "[t]he deposition process provides a method to obtain more complete information  . . . . and is thus favored." *Clear Cast Grp., Inc. v. Ritrama, Inc.,* No. 1:09CV0169, 2011 WL 13334451, at *3 (N.D. Ohio Sept. 15, 2011) (citations omitted). For these same reasons, "a corporation may not take the position that its documents state the company's position." *Id.*

Defendants cannot identify any legal support for their contrary position.  Rather, they argue simply that Plaintiffs "do not need Metro to interpret [the documents]." ECF No. 215-1 at 23. Again, Plaintiffs seek the official position of the City regarding what documentation was required to be, or ordinarily would have been, maintained regarding decisions to order dispersal of protests,

to use crowd control devices and whether that documentation was completed. Likewise, Plaintiffs seek the City's testimony regarding the planning documents created during or in preparation for the protests and, specifically "the authors and chain of review for the same." *See* ECF No. 215-2. Numerous documents provided have no identifiable authors and Named Defendants were frequently unable to recollect the chain of review for these documents.[13] The official testimony of the City is both necessary to answer these questions and an efficient means of doing so. Moreover, under Rule 26(b)(2)(C), Defendants must establish "not just [that] the testimony is cumulative and duplicative," but "[that] the testimony is *unreasonably* cumulative and duplicative." *Cross v. Dental Assisting Acad. of Louisville, LLC,* No. 18-CV-00767, 2022 WL 627030, at *5 (W.D. Ky. Mar. 3, 2022) (emphasis in original) (citation omitted). Defendants have failed to meet that burden.

### III.    The Notice is Consistent with Rule (30)(b)(6)

Under Rule 30(b)(6), "a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." The reasonable particularity requirement is a practical one: "The test for reasonable particularity is whether the request places a party upon reasonable notice of what is called for and what is not." *Wright*, 2022 WL 2392565, at *10 (Lindsay, J.) (citation omitted). Plaintiffs' notice satisfies this minimal burden. Indeed, Plaintiffs have diligently sought to achieve a shared understanding of the topics about which Plaintiffs seek the City's testimony, both through the representations of counsel during the conferral process and through three rounds of edits responsive to concerns raised.

Nevertheless, Defendants argue that some topics are "overbroad" and not reasonably particular. Specifically, Plaintiffs seek testimony regarding "any reviews or assessments conducted

---

[13] *See, e.g.,* Exhibit F (Excerpt from Dep. of LaVita Chavous) at 111:11–112:6 (disclaiming knowledge of the officers responsible for drafting or reviewing incident action plans related to the protests).

by the City or LMPD regarding the amount or extent of crowd control device usage." ECF No. 215-2. Defendants object to this topic as "not reasonably particular because it contains undefined terms 'reviews and assessments.'" ECF No. 215-1 at 23. Likewise, Defendants argue that Topics 1, 2, and 5 under "Documentation" are overbroad because "'documents' is not defined." *Id.* at 18.

Reasonable particularity "does not require or authorize the degree of precision on which [Defendants] insist[.]" *Am. Consol. Indus., Inc. v. Blasingim*, No. 1:19-cv-137, 2022 WL 17687491, at *39 (N.D. Ohio Dec. 15, 2022) (explaining that "the discovery rules require opposing parties and their counsel to cooperate in good faith and avoid [ ] gamesmanship"). Plaintiffs have repeatedly made every effort to ensure the clarity of the noticed topics—including by thrice amending the language of the notice and by seeking to clarify still other terminology through both the conferral process and prior motions in this case. For example, Defendants concede that Plaintiffs attempted to clarify Topic 5 under "Tracking of Crowd Control Devices" as seeking "information about what type of review might be done following the use of crowd control devices, including incident reviews, logs and accounting of how many devices were used, and any other retrospective report that might be completed." *See* ECF No. 215-4. Defendants argue that this clarification is insufficient because "Metro has no idea what 'might' be done." To be clear: Plaintiffs seek testimony regarding the City's own policies and procedures for reviewing and assessing crowd control device usage. This language is sufficient to place the City upon "reasonable notice of what is called for and what is not." *Wright*, 2022 WL 2392565, at *10.

## IV.     Under Fed. R. Civ. P. 30(d)(1), Plaintiffs Are Entitled to a Full Deposition

Since May of 2023, Plaintiffs have sought the testimony of Defendant Louisville/Jefferson County Metro Government pursuant to Rule 30(b)(6) on each of the noticed topics. That month, Plaintiffs separately sought the testimony of Mayor Greenberg on current policies and procedures

on protest response. Defendants separately objected and moved for a protective order on both notices. ECF Nos. 136, 144. This Court denied Defendants' Motion to Quash the deposition of Mayor Craig Greenberg, ECF No. 154, and Defendants objected. ECF No. 158.

While both motions remained pending, the Parties were directed to meet and confer to determine whether a compromise could be reached which would resolve the outstanding objections to the noticed depositions of both Mayor Craig Greenberg and Defendant Louisville/Jefferson County Metro Government. To reach such a compromise, the Parties agreed upon a two-stage approach that contemplated, first, a limited 30(b)(6) deposition regarding the current policies and, second, a negotiation regarding the remaining topics in Plaintiffs' original 30(b)(6) notice. *See, e.g.,* ECF No. 183 at 2 n.1; *see also* ECF No. 190 ("The parties will meet and confer after that deposition to discuss the remainder of the topics listed in Plaintiffs' initial 30(b)(6) notice."). Relying on these representations, on March 12, 2024, this Court denied Defendants' respective motions as moot based on the Parties' agreement. *See* ECF Nos. 188, 186.

Likewise, relying on these representations, Plaintiffs served a limited notice of deposition of Defendant Louisville/Jefferson County Metro Government seeking testimony on only the five agreed-upon topics related to Defendants' *current* policies and procedures. *See* ECF 214-1. The City produced Assistant Chief Emily McKinley as its designee on those specific topics and, on June 18, 2024, Plaintiffs conducted that limited deposition. At all times, Plaintiffs maintained that this deposition was intended to eliminate the need for a deposition of Mayor Greenberg, and did not relieve the City of their obligation to designate a witness to testify about the topics listed in the initial 30(b)(6) notice. *See, e.g.,* ECF Nos. 183, 190; *see also* ECF No. 214-1 at 2 ("Plaintiffs reserve the right to depose a corporate representative regarding the remainder of the topics listed in their first notice.")

Under Fed. R. Civ. P. 30(d)(1), unless otherwise stipulated or ordered by the court, Plaintiffs are entitled to seven hours for each deposition conducted. *See* Fed. R. Civ. P. 30 advisory committee's notes to 2000 Amendment ("For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."). This is so, even where the same deponent testifies both in their individual capacity and as a corporate designee.[14] Here, the Parties agreed to conduct two 30(b)(6) depositions: A limited deposition on the current policies; and a broader deposition on the policies in place during the summer of 2020. These depositions have always been treated as separate depositions for which Plaintiffs are presumptively entitled to the full seven-hour durational limit.

Following the deposition of Chief McKinley, Defendants, for the first time, refused to "produce a witness for the full seven hours" to testify regarding the policies in place during the summer of 2020.[15] In response, Plaintiffs explained that "this position is inconsistent with the Federal Rules of Civil Procedure and with our understanding of the process we agreed to nearly a year ago when we began our negotiations around the limited 30(b)(6) notice." ECF No. 215-4 at 2. Specifically, Plaintiffs noted that the Rules make clear that "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition."[16] *Id.* (citing Fed. R. Civ. P. 30 advisory committee's note to 2000 amendment).

---

[14] *See, e.g., Bison Advisors LLC v. Kessler,* No. CIV. 14-3121 DSD/SER, 2015 WL 4509158, at *2 (D. Minn. July 24, 2015) ("As a result, an individual deposed under Rule 30(b)(1) but also designated as a corporate representative . . . . is often required to appear for a separate seven-hour deposition on behalf of the corporation."); *Ins. Servs. Network, Inc. v. Balboa Life & Cas., LLC,* No. CV034728TJHPLAX, 2004 WL 7332828, at *1 (C.D. Cal. Dec. 6, 2004); *Sabre v. First Dominion Cap., LLC,* No. 01CIV2145BSJHBP, 2001 WL 1590544, at *2 (S.D.N.Y. Dec. 12, 2001) ("[T]he 30(b)(6) deposition of an witness is a separate deposition from the deposition of that same person as an individual witness and is presumptively subject to a separate, independent seven-hour time limit.")

[15] Defendants now offer "[i]n the spirit of compromise, and to simplify the timing" to designate "one or more witnesses for the below topics for a full two hours" as opposed an hour and 55 minutes. ECF No. 215-3 at 2.

[16] On January 8, 2025, Defendants responded citing Fed. R. Civ. P. 30(d)(1) advisory committee note 2000 Amendment which states "[i]n cases in which the witness will be questioned about numerous or lengthy

Nevertheless, Defendants have now moved for a protective order on the appropriate durational limit, arguing for the first time, and contrary to prior representations, that the depositions should be treated as one because the City intends to again designate Assistant Chief Emily McKinley to testify. *Compare,* ECF No. 215-3 at 2 (agreeing to designate "one or more witnesses"[17]). Again, this argument flies in the face of the Parties prior agreements and is inconsistent with both Rule 30(d)(1) and Rule 30(b)(6).

Pursuant to Rule 30(b)(6), the City "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the discovering party] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the discovering party] as to the relevant subject matters." *Fed. Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 199 (E.D. Tenn. 1986), *aff'd,* 116 F.R.D. 203 (E.D. Tenn. 1987) (citations omitted); *Schnatter,* 343 F.R.D. at 335 ("Further, corporations have a 'clear duty to make a good faith, conscientious effort to designate appropriate persons' and prepare them accordingly.") (citations omitted); *Clear Cast Grp.*, 2011 WL 13334451, at *2. While Plaintiffs do not object to the designation of Asst. Chief McKinley[18]—on the understanding that she will be

---

documents, it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition . . ." ECF No. 215-5 (January 8, 2025, Letter from W. Carroll). Defendants encouraged Plaintiffs to "take that step" noting that it "may help bridge the gap on some of these issues." *Id.* Plaintiffs agreed to do so where feasible and attempted to affirm agreement on duration. *See* Ex. C.

[17] As expressly contemplated within Rule 30(b)(6), it is common practice to designate multiple witnesses based on their respective knowledge and expertise as it relates to the noticed topics. *See, e.g., Schall v. Suzuki Motor of Am., Inc.,* No. 4:14CV-00074-JHM, 2017 WL 4050319, at *5 (W.D. Ky. Sept. 13, 2017) ("When a corporation is served with a notice of a Rule 30(b)(6) deposition, it is obligated to produce *a witness or witnesses* knowledgeable about the subject or subjects described . . .") (emphasis added). Indeed, Courts frequently encourage designation of multiple witnesses precisely to ensure that knowledge requirement is met *without* burdening designees with substantial preparation. *See, e.g., Butcher*, 116 F.R.D. at 201 (questioning why the corporation did not designate witnesses involved in the relevant activity).

[18] In 2020, Maj. McKinley was a Patrol Division Commander. Defendants have given no indication that she played a role in promulgating, implementing, training on, or enforcing the policies and procedures at issue in this deposition or is otherwise an appropriate designee knowledgeable about the noticed topics. Her designation is thus in tension with arguments on burden; having elected to produce a designee without personal knowledge, Defendants cannot now move for a protective order based on the time and cost of preparing that same witness.

prepared to testify on behalf of the City—the decision to select a designee who appears to have limited knowledge of the matters sought for the purposes of this deposition does raise questions about possible gamesmanship, given the history of this dispute.

Federal Rule of Civil Procedure 1 imposes an obligation on attorneys to "amicably work together in good faith to address routine discovery issues." *Equal Emp. Opportunity Comm'n v. Tepro, Inc.,* No. 4:12-CV-75-HSM-SKL, 2014 WL 12562856, at *3 (E.D. Tenn. Aug. 29, 2014); *see also,* Local Rule 37.1 (reiterating the importance of having counsel confer in good faith prior to the filing of "any dispute relating to discovery"). In agreeing to the proposed compromise resolution and conducting the deposition of Asst. Chief McKinley, Plaintiffs relied upon the understanding that these depositions had been and would remain treated as two separate depositions for the purposes of the durational limit. Thus, Plaintiffs would now be prejudiced by a ruling granting a protective order preventing Plaintiffs from utilizing the full time allowed by Rule 30(d)(1). As such, this Court should deny Defendants' motion or, in the alternative, "allow additional time . . . needed to fairly examine the deponent." *See* Fed. R. Civ. P. 30(d)(1) (requiring additional time be allowed "if the deponent, another person, or any other circumstance impedes or delays the examination[,]" as well").[19]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for a Protective Order in its entirety.

---

[19] The Advisory Committee notes several factors that a court might consider, in determining whether to extend the time for a deposition, including whether the witness will be questioned about numerous or lengthy documents, whether lack of preparation prolonged the deposition, or whether the subject matter is likely to cover events occurring over a long period of time. *See* Fed. R. Civ. P. 30 advisory committee's notes on 2000 amendment. As outlined above, multiple factors support allowing additional time to depose Asst. Chief McKinley, including her lack of preparation for the prior deposition which deprived Plaintiffs of a meaningful opportunity to depose her on the topics about which she was designated to testify. *See* ECF Nos. 214, 219.

Dated: January 31, 2025
    Louisville, KY

Respectfully Submitted,

/s/ *Catherine Logue*
Catherine Logue*
Christopher Kemmitt*
Gabriel Diaz*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector St., 5th Floor
New York, NY 10006
(212) 965-2200
clogue@naacpldf.org
ckemmitt@naacpldf.org
gdiaz@naacpldf.org

Corey Shapiro
ACLU OF KENTUCKY FOUNDATION
325 W. Main St., Suite 2210
Louisville, KY 40202
(502) 581-9746
corey@aclu-ky.org

Samuel Shapiro*
EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000
sshapiro@ecbawm.com

*Counsel for Plaintiffs*
*\*Admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2025, the foregoing was electronically filed with the

Clerk of the Court using CM/ECF which will send notice of electronic filing to the registered

counsel.

/s/ *Catherine Logue*
Catherine Logue

*Counsel for Plaintiffs*