UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE
CASE NO. 3:20-cv-535-BJB-CHL

**ATTICA SCOTT,** *et al.*     **PLAINTIFFS**

**v.**     *Electronically Filed*

**LOUISVILLE/JEFFERSON COUNTY METRO
GOVERNMENT,** *et al.*     **DEFENDANTS**

\*\*\* \*\*\* \*\*\* \*\*\*

**METRO'S REPLY IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER [ECF 215]**

Defendant, Louisville/Jefferson County Metro Government ("Metro"), hereby furnishes its Reply in Support of Motion for Protective Order [ECF 215].

Metro's Motion for Protective Order on Plaintiffs' 34 topic November 2024 30(b)(6) Notice [ECF 215] and Plaintiffs' Motion to Compel further testimony related to Chief McKinley's five-hour 30(b)(6) deposition [ECF 214], arise from the same problem: neither the Federal Rules of Civil Procedure nor case law support their position. Plaintiffs have already completed a five-hour and five-minute 30(b)(6) deposition of Emily McKinley and then moved to compel further testimony from her in her 30(b)(6) capacity. At the same time, Plaintiffs expect Metro to produce another 30(b)(6) witness for a full seven hours on 34 overly broad and irrelevant topics.

Metro simply seeks conformity with the language of Fed. R. Civ. P. 30(b)(6), the seven-hour rule under 30(d)(1), and the reasonable and practical limitations set forth in Fed. R. Civ. P. 26(b)(1). Many topics in the November 2024 Notice are overly broad, unduly burdensome, and not stated with reasonable particularity. Metro has produced hundreds of thousands of pages of documents, [*see* ECF 144-3 and 144-4], and Plaintiffs' 30(b)(6) Notice would require Metro's witness to go through the lion's share of those documents, interview the hundreds of people

–1–

referenced in those documents, and memorize them in case Plaintiffs decide to ask about any of those particular documents [*see* ECF 215-2]. The burden the 30(b)(6) Notice would impose was quantified to the Court back in 2023, and the burden has only increased with the passage of a year and additional documents produced. The Court does not need a Metro witness to provide a declaration that can only guess how long it would take for it and its counsel to read through the thousands of documents and interview the hundreds of people implicated by the 30(b)(6) Notice; the burden is self-evident.

For the reasons set forth in Metro's Motion for Protective Order [ECF 215], which was also quantified and discussed in 2023 [ECF 144-1], and as explained further below, Metro asks the Court to limit the 30(b)(6) notice to the topics Metro has agreed to for the agreed-to two hours, which already exceeds Fed. R. Civ. P. 30(d)(1).

## ARGUMENT

**A.   The self-evident burden on Metro to prepare a witness on the improper topics in Plaintiffs' 30(b)(6) Notice outweighs the benefit that Plaintiffs would receive from the deposition.**

Rule 30(b)(6) obligates Metro "to produce a witness or witnesses knowledgeable about the subjects described in the notice and to prepare the witness or witnesses to testify not simply to their own knowledge, but the knowledge of" Metro. C*onsumer Fin. Prot. Bureau v. Borders & Borders*, PLC, No. 3:13-CV-1047-CRS, 2016 WL 9460471, at *3 (W.D. Ky. June 29, 2016). This is no ordinary task, particularly when the notice requests testimony on an unlimited scope of documents and information:

> Preparing a 30(b)(6) witness is not a casual exercise where a witness simply has to testify as to his own personal knowledge. A 30(b)(6) witness is testifying as to the collective knowledge and information known or reasonably available to the corporation, and in preparation may be required to gather documents, interview witnesses and become familiar with each topic to which he will be called upon to testify. *Could witnesses familiarize themselves with all of the discovery information*

> *previously provided here, in order to be able to intelligently respond on behalf of IP and Georgia-Pacific to the universe of possible questions NCR might ask under these notices?* Given enough time and manpower, it could conceivably be done. *But is that what Rule 30(b)(6) calls for, and would it justify the burden and expense to have someone regurgitate what has already been produced? Weighing all the factors, the Court finds the answer must be no to these questions.* Nothing has convinced the Court that the deponents would produce anything that was not essentially duplicative of what has already been produced, or that they could conceivably do it in a reasonably timely fashion and certainly not in the time allowed. To the extent that there were bits of evidence here or there that were not duplicative, the time and expense needed to prepare to respond to such a broad and non-specific notice would not justify the effort necessary. *The liberal discovery allowance of the Federal Rules do not permit the proponents of discovery to "wield [ ] the discovery process as a club by propounding requests compelling the recipient to assume an excessive burden."* Braun v. Medtronic Sofamor Danek, Inc., [sic] 2013 WL 1566692, at *3 (D. Utah).

*Georgia-Pacific Consumer Products, LP. v. NCR Corp*, Case No. 1:11-cv-483, 2015 WL 11236844, at *2 (W.D. Mich. Feb. 23, 2015) (emphasis added). Metro's witness and counsel therefore cannot skim a handful of the documents and watch a handful of videos and declare themselves prepared in compliance with Fed. R. Civ. P. 30(b)(6).

A Rule 26 advisory committee note to the 2015 amendment acknowledges the burden of modern discovery practices:

> The 1993 Committee Note . . . observed that "[t]he information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression." What seemed an explosion in 1993 has been exacerbated by the advent of e-discovery.

Fed. R. Civ. P. 26 Advisory Committee Notes on 2015 Amendments. That "information explosion" is present in this case, as Metro has produced hundreds of thousands of pages of documents since this case was filed. Its extensive discovery efforts through July of 2023 were detailed in the previously filed Memorandum of Support of Motion for Protective Order [ECF 144-1 at p. 2-6], the declaration of Todd Cooper [ECF 144-3], and the declaration of Aimee Harrison [ECF 144-4]. However, to reiterate, as of July 2023, Metro produced 155,538 documents

consisting of 240,105 pages through its e-discovery vendor ArcherHall. [ECF 144-3.] Additionally, Metro produced over 7,000 pages of documents outside the assistance of ArcherHall including 26 PSU and PIU files and 1,870 digital files. [ECF 144-4.] Since July 2023, Metro has produced hundreds more pages of documents. Those documents consist of reports, planning documents, letters, public statements, internal communications, and other emails about protest activities between May 1, 2020, and November 25, 2020.

Because past is prologue and Metro witnesses have already given deposition testimony to Plaintiffs' counsel in this case, Metro well knows that its designated witness must read every email and attachment and every other record that was prepared in 2020 and produced in this case, then research and likely interview an untold number of authors to such email or record to be even begin answering questions Plaintiffs *may* ask. Metro has no reasonable methodology to quantify that burden, but Metro is not speculating or cutting corners in its assertion that the burden is immense.

Most of the 34 topics in Plaintiffs November 2024 Notice are unduly burdensome because they seek testimony on many of Metro's previously produced documents without providing a reasonable scope. For instance, Topic 5 under Tracking of Crowd Control Devices requests a witness to testify on "[*a*]*ny* reviews or assessments conducted by the City or LMPD regarding the amount or extent of crowd control device usage." [ECF 215-2.] To comply with Fed. R. Civ. P. 30(b)(6), Metro would be forced to designate a witness to search for, locate, consult with anyone who is a party to the documents, and memorize the content to possibly answer a finite list of questions about maybe a handful of those documents *if* Plaintiffs elect to do so. The Court does not need a declaration from Metro to appreciate the burden imposed in relation to the usefulness of that possible testimony. That is but one example that illustrates the impossible task the proposed topics present.

Topics 2, 3, and 4 under LMPD Internal Oversight Mechanisms seek testimony on PSUs, PIUs, and other Metro conducted investigations, which would cover thousands of pages of documents related to process information, investigator information, videos, witness and documentation information, and conclusions pertaining to each investigation. [ECF 215-2.] By way of example, Metro already provided the Court with the Attica Scott PSU cited by Plaintiff, a 121-page file that demonstrates to the Court what a Metro 30(b)(6) witness would have to do to answer questions about that and dozens of other similar files. [ECF 156-1.] The 121-page report contains approximately a dozen different names of people involved in Ms. Scott's investigation. [*Id.*] It also contains videos that the witness would need to review. [*Id.*] And the 121-page report is just one of 24 PSUs produced by Metro. It is not that Metro has failed to quantify its burden as Plaintiffs' response asserts; the reality is Metro has no possible way to estimate the numerous hours it would take for its 30(b)(6) designee to comply with the stringent requirements of Fed. R. Civ. P. 30(b)(6) itself.

Presenting a 30(b)(6) witness on topics 1, 2, and 5 under Documentation—catch all topics requesting testimony on "*all documentation concerning*" decisions on use of dispersal orders and crowd control devices, and "*all planning documents*" regarding preparation for protests—is a similarly impossible and unquantifiable task. The Topics under Training of Officers request testimony on "*all* training mandated for or made available" and "*[a]ll* trainings, guidance, or other materials developed or provided"—again implicating memorization of the days, times, and complete contents of every training. Plaintiffs' assertion that Metro can only establish its burden and expense through a Metro declaration is akin to requiring a declaration to establish the burden of scaling Mount McKinley by foot.

Metro has invited Plaintiffs to reduce Metro's burden to provide the testimony Plaintiffs

need for this case, but Plaintiffs have declined that invitation. In response to Metro's request that Plaintiffs specifically identify which of the thousands of documents Plaintiffs would like Metro to use to prepare for the deposition, Plaintiffs stated they were "certainly open to providing [Metro] with a list of relevant topics that we intend to cover, *though we would note that this list would not be exhaustive.*" (December 20, 2024, C. Logue Email [ECF 215-4] (emphasis added).) That response proves that Plaintiffs are more interested in putting Metro in an impossible position during discovery than obtaining relevant Metro testimony helpful to their claims.

Finally, citing this Court's opinion in *Schnatter v. 247 Grp., LLC*, 343 F.R.D. 325, 333 (W.D. Ky. 2022), Plaintiffs claim that the testimony on "policies, documentation, training, and internal oversight mechanisms . . . used to instruct officers in responding to the protests during the summer of 2020" cannot be obtained from another more convenient, less burdensome or less expensive source. [ECF 221 at 18.] That assertion flies in the face of the fact that the words in those documents themselves provide the best and most convenient evidence.

**B.    Binding Sixth Circuit authority bars after-the-fact investigations as relevant to any claims.**

Topics 2, 3, and 4 and the 12 subtopics therein under LMPD Internal Oversight Mechanisms are also improper because they seek testimony on after-the-fact investigations that are not relevant to Plaintiffs' claims. These topics seek testimony on 2020 PSUs, PIUs, and other mechanisms by which the City conducted investigations into excessive force complaints, civil disturbances, or "other mass events." Plaintiffs continue to argue Metro's after-the-fact investigations into Metro's response to the 2020 unrest can establish municipal liability under a theory of ratification and "a single instance of ratification by a final policy maker . . . may suffice."

–6–

[ECF 221 at 12.][1] The Court should scrutinize the authority Plaintiffs cite for that proposition.

The citation Plaintiffs provide in support of their ratification argument, *Rideout v. Shelby*, is neither binding nor reliant on good law. 691 F. Supp. 3d 816 (E.D. Mich. 2023). Oddly, Plaintiffs' citation to that case suggests that its analysis relied on Supreme Court and Sixth Circuit precedent, but, in fact, *Rideout* relies on Judge Simpson's opinion in this case. *Id.* at 829. As discussed in Metro's motion and below, Judge Simpson's opinion in this case relied on old, outdated authority that the Sixth Circuit overruled in *Pineda v. Hamilton County*. The *Rideout* case therefore suffers from the same defect.

Despite their reliance on the flawed *Rideout* opinion, Plaintiffs are aware that the Sixth Circuit has time and again rejected the authority Judge Simpson relied on in his ruling. For example, Plaintiffs cite *Kirk v. Calhoun County* in their discussion about "a pattern of inadequately investigating similar claims." [ECF 221 at 11.] But in *Kirk* the Sixth Circuit followed *Pineda* and rejected Plaintiffs' core ratification argument. 2021 WL 2929736 at *7 (6th Cir. 2021) (the plaintiff there "relie[d] almost exclusively on [the same] decades-old *Monell* jurisprudence [related to ratification that Plaintiffs rely on in this case] . . . . [while the Sixth Circuit] ha[s] since restricted

---

[1] Plaintiffs claim that "[d]iscovery has made clear" that alleged policies that violated Plaintiffs rights were "promulgated, ratified, and acquiesced to" at the "highest level of City government" throughout the summer of 2020. [ECF 221 at 9.] They cite no legitimate evidence of this alleged ratification. Rather, Plaintiffs point to an investigation initiated by a report filed by Plaintiff Attica Scott for the proposition that certain conclusions from that investigation were "approved" by both the Mayor and Chief of Police—therefore said approvals evidence ratification. [ECF 221 at 9-10.] The report merely explains that Chief Shields determined that the officer against whom Ms. Scott had filed her complaint was exonerated because video evidence—specifically cited in the PSU 20-057 file itself—shows two warnings from the officer for Ms. Scott to move back and ten separate dispersal orders over fourteen minutes (that the crowd ignored) before dispersing tear gas. [ECF 156-1 at L0152939 and L0152949-50.] As it relates to the officer touching Ms. Scott, the report notes Ms. Scott's own video shows the officer told her to move, she refused to move, and then after being moved by the officer she said: "You don't have to touch me, you coulda just said move." [*Id.* at L0152948.] The report also indicates Ms. Scott's own video shows her in the street blocking traffic when she was moved and that there were numerous protesters engaged in dangerous activities, which she also captured on video. (*Id.* at L0152948-49.) Plaintiffs have all the videos the report references, and the report cites the applicable standard operating procedure provisions—also in Plaintiffs' possession—that were implicated by PSU 20-057. [*See id.* at L0152963-71.] The report speaks for itself, as do the cited videos and Chief Shields' conclusion.

–7–

the scope of this ratification theory"). In other words, even the *Kirk* case that Plaintiffs cite in support of their ratification theory relied on *Pineda* to reject Plaintiffs' proffered theory here.

The Sixth Circuit's *Pineda v. Hamilton County, Ohio* opinion is unequivocal:

> Because municipal liability requires an unconstitutional "policy" or "custom," we have held that an allegation of a single failure to investigate a single plaintiff's claim does not suffice. *See Burgess v. Fischer*, 735 F.3d 462, 478–79 (6th Cir. 2013); *Thomas v. City of Chattanooga*, 398 F.3d 426, 433–34 (6th Cir. 2005). As a result, "a claim based on inadequate investigation" requires "not only an inadequate investigation in this instance," but also "a clear and persistent pattern of violations" in earlier instances. *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017). That is, "there must be multiple earlier inadequate investigations and they must concern comparable claims." *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019).

977 F.3d 483, 495 (6th Cir. 2020). Plaintiffs' 30(b)(6) topics relate to 2020 PSUs and PIUs related to events described in the Complaint, not earlier PSUs and PIUs related to earlier "comparable claims." Therefore, even if the 2020 investigations were relevant for purposes of discovery in general, the investigations cannot support Plaintiffs' § 1983 *Monell* ratification claim against Metro under this binding Sixth Circuit precedent.

Plaintiffs' argument on this issue also puts the cart before the horse by assuming that the alleged less lethal usage described in the Amended Complaint is unconstitutional. Plaintiffs have yet to point to any unconstitutional conduct that supports their claims or their need to take an overly burdensome 30(b)(6) deposition on irrelevant topics. Plaintiffs assert that the use of "crowd control weapons," specifically tear gas, evidence a pattern of unconstitutional conduct because "Defendants failed to utilize internal oversight mechanisms to restrict or end this activity." [ECF 221 at 11.] Missing from that conclusion is a citation to any authority finding that conduct unconstitutional. In *Abdur-Rahim*, the Sixth Circuit noted that no other Sixth Circuit case to date has found that the use of pepper spray to disperse a crowd had been declared a Fourth Amendment violation. 825 Fed.Appx. 284, 287 (6th Cir. 2020) (holding that "none of our cases has extended

–8–

[excessive force] to apply when using pepper spray to disperse a crowd"). Metro is unfamiliar with any post-*Abdur-Rahim* precedent that says otherwise, and even if such precedent exists, it did not apply in 2020 when the events occurred. *See Id.* at 286 ("A clearly established right must be 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right . . . . [and] caselaw must clearly and specifically hold that what the officer did—under the circumstances the officer did it—violated the Constitution.") (cleaned up). Because no such authority exists, investigations into 2020 conduct by the police that had not been previously adjudicated unconstitutional cannot prove ratification of unconstitutional conduct. Plaintiffs' topics on 2020 PSUs, PIUs, and other mechanisms by which the City conducted investigations are simply irrelevant.

Finally, Plaintiffs attempt to erect a false heightened standard for overcoming Judge Simpson's erroneous ratification ruling in this case. [ECF 221 at 10-11.] While Plaintiffs suggest that Metro must clear a two-prong test of showing the decision "was clearly erroneous and adhering to it would work a manifest injustice," *Pelzer v. Vassalle* also permits the Court to apply *Pineda v. Hamilton County, Ohio* here because the Court is being "confronted with new evidence or relevant law." 655 F. App'x 352, 359 (6th Cir. 2016). Plaintiffs have not sincerely argued that *Pineda* is not binding law, and the mere fact that it applies to destroy Plaintiffs' ratification theory of liability is enough for the Court to dispense with Judge Simpson's ruling on the ratification claim. That said, Metro can satisfy the two-prong test as well because Judge Simpson's opinion runs afoul of *Pineda v. Hamilton County, Ohio*. Second, manifest injustice would certainly occur by imposing the enormous burden on Metro to prepare a witness to testify about after-the-fact investigative files that, as a matter of Sixth Circuit law, cannot support Plaintiffs' dead-end ratification theory of liability.

**C.      Plaintiffs do not allege a lack of LMPD training as a cause of their alleged injuries and therefore their training topics are irrelevant.**

Plaintiffs' Amended Complaint alleges three grounds for the existence of § 1983 liability against Metro: the existence of an official policy, decisionmaker ratification, and acquiescence. (Amended Compl. ¶¶ 288, 293, 301, and 304.) Inadequate training can serve as grounds for § 1983 liability in cases where it is properly pled. Here, however, Plaintiffs' Amended Complaint makes no reference to inadequate training, and they should be precluded from questioning a Metro witness on irrelevant topics. (*Id.*). Plaintiffs argue that Metro failed to provide legal support on this motion [ECF 221 at 13], but Metro cited Plaintiffs' own Amended Complaint—*the* operative document for purposes of determining relevance of discovery requests. In contrast, Plaintiffs' reliance in a footnote on a 1977 case from the Eastern District of Tennessee—*Kopper Glo Fuel, Inc. v. Island Lake Coal Co.*, 436 F.Supp. 91, 99 n.4 (E.D. Tenn. 1977)—is not binding on the Court and demonstrates the weakness of Plaintiffs' discovery efforts in this area. [*See* ECF 221 at 13.]

**D.      Discovery about discovery is disfavored here because Plaintiffs have not presented a legitimate reason to question the sufficiency of Defendants' discovery responses.**

Topic 2 under the Participation in this Litigation category requests testimony on "[a]ll interrogatory responses served by both the City and LMPD" which constitutes "discovery about discovery." This type of request is disfavored by courts in this and other circuits; *Edwards v. Scripps* explains as follows:

> Courts have ordered "discovery about discovery" when the record suggests that there is reason to distrust the responding party's diligence. *See, e.g., Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *3 (S.D. Ohio Nov. 15, 2013). "In general, such discovery will be allowed if a party's efforts to comply with proper discovery requests are reasonably drawn into question." *Crocs, Inc. v. Effervescent,*

*Inc.*, No. 06-CV-00605-PAB-KMT, 2017 WL 1325344, at *8 (D. Colo. Jan. 3, 2017), objections overruled, 2017 WL 1325171 (D. Colo. Feb. 24, 2017). "When a party responding to discovery takes the position that it has fully responded, the court usually will not compel a further response absent evidence that the responding party has improperly withheld documents." *Conagra Foods Food Ingredients Co. v. Archer Daniels Midland Co.*, No. 12-2171-EFM, 2014 WL 1570263, at *6 (D. Kan. Apr. 18, 2014).

331 F.R.D. 116, 125 (E.D. Mich. 2019). Metro has fully responded to all discovery requests to date and Plaintiffs have filed no discovery motions accusing Metro of failing to produce any responsive information. Plaintiffs Response brief insinuates that there is reason to distrust Metro's discovery efforts, however they provide no real evidence that Metro ever improperly withheld documents. "Absent evidence that the responding party has improperly withheld documents[,]" this Court should not allow Plaintiffs "discovery about discovery" topic to go forward. *Id.*

    **E.**    **Plaintiffs used five hours and five minutes of their seven-hour time limit during Assistant Chief McKinley's deposition and should be limited to two hours maximum for any additional 30(b)(6) deposition testimony.**

Fed. R. Civ. P. 30(d)(1) places a seven-hour and one day limit on the 30(b)(6) notices issued to Metro. Metro designated Assistant Chief McKinley[2] as its 30(b)(6) witness and intends to do so again. And because she has already testified for over five hours, Plaintiffs are prohibited from subjecting her to an additional seven hours. *See* Fed. R. Civ. P. 30 Committee Notes on Rules—2000 Amendment ("For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition.").

Plaintiffs misstate Metro's position on the length of the 30(b)(6) depositions throughout their Response brief. They cite language from agreed orders regarding Metro's willingness to meet

---

[2] Plaintiffs cite caselaw for the proposition that a percipient witness may be subjected to an additional seven hours as a 30(b)(6) witness, but that authority has no application here. It matters not that Assistant Chief McKinley was on the force in 2020 and Plaintiffs could have been a fact witness. Neither Plaintiffs nor Metro identified her as a fact witness to be deposed. Thus, her only role in this case has been and will be as a 30(b)(6) witness, which Fed. R. Civ. P. 30(d)(1) controls.

–11–

and confer on additional topics as evidence that Metro somehow agreed to present a second witness for seven full hours. *See* [ECF 221 at 22] (citing [ECF 190 at 2]) ("*The parties will meet and confer after that deposition to discuss the remainder of the topics listed in Plaintiffs' initial 30(b)(6) notice.*"). Metro never agreed "to conduct two 30(b)(6) depositions" for which Plaintiffs would "presumptively" be entitled to fourteen total hours of testimony. [*See* ECF 221 at 22, 23.] Instead, Metro agreed to present Assistant Chief McKinley as its 30(b)(6) witness for up to seven hours. Plaintiffs went forward with that deposition and used five hours and five minutes of their seven-hour time limit under Rule 30(d)(1). Metro then agreed to produce a witness to testify on eight of 34 topics in Plaintiffs' November 2024 Notice limited to two hours. (December 13, 2024, B. Paul Letter [ECF 215-3].) No authority supports Metro's 30(b)(6) witness having to endure another seven hours of testimony just because Plaintiffs elected to spend five hours and five minutes deposing her on five other topics.

## CONCLUSION

For the foregoing reasons, Metro requests that this Court enter a protective order on the topics contained in Plaintiffs' November 2024 Notice to which Metro has objected.

Respectfully submitted,

*/s/ Bruce B. Paul*
BRUCE B. PAUL
WILLIAM G. CARROLL
McBrayer PLLC
500 West Jefferson Street, Suite 2400
Louisville, Kentucky 40202
Phone: (502) 327-5400
bpaul@mcbrayerfirm.com
wcarroll@mcbrayerfirm.com
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

      I hereby certify that on February 14, 2025, the foregoing was electronically filed with the Clerk of the Court using CM/ECF which will send notice of electronic filing to the registered counsel.

                                          */s/ Bruce B. Paul*
                                          ***Counsel for Defendants***